[Civ. No. 13734.   First Dist., Div. One.   Dec. 17, 1948.]

ELVIRA E. FORD, Appellant, v. CAREW & ENGLISH (a Corporation) et al., Respondents.

Melvin M. Belli for Appellant.

Daniel J. O'Brien and Bronson, Bronson & McKinnon for Respondents.

BRAY, J.—Appeal by plaintiff in a personal injury case from a judgment after verdict in favor of defendants. Plaintiff also attempts to appeal from the order denying a motion for new trial, which order is not an appealable one. (Code Civ. Proc., § 963.)

The grounds of appeal are: (1) the evidence is insufficient to support the verdict; (2) the court erred in excluding certain evidence; and (3) in giving and refusing certain instructions.

## STATEMENT OF FACTS

Defendant Carew & English, a corporation, owns and operates a funeral parlor. Defendant Liddle, 67 years of age, is a first cousin of one of the owners of the corporation. Liddle had driven for defendant corporation since 1914. In 1942, he bought a limousine which, from then on, he drove as a "mourn-

ers' '' car in funeral processions of Carew & English as well as of three or four other concerns.[1] In May, 1945, plaintiff and her brother made arrangements with Carew & English for funeral services for plaintiff's mother, including the use of two mourners' cars. Carew & English engaged Liddle to supply one of these cars. On the return from the cemetery, plaintiff was riding in the car which Liddle was driving. Nothing unusual occurred until the car was proceeding along West Portal Avenue. Light standards are interspaced down the center of this wide street. There was no traffic, the day was clear, and the car apparently in perfect mechanical condition. Liddle was driving at between 20 and 22 miles per hour, when the car gradually veered to the left for about 15 feet and smashed into a light standard. Plaintiff was severely injured. Because of traumatic amnesia, plaintiff could not recall the accident. Two of the guests in the car testified that at no time did the driver slump at the wheel, but sat upright, holding the wheel, and drove the car directly into the light standard, hitting it dead center. One of the occupants of the car testified that after the impact Liddle "got out of the car pretty fast" and that he was standing alongside the car before any of the other occupants emerged.

Liddle testified that the accident was due to the fact that without warning he lost consciousness, and that the first thing he remembered was that he was standing on the sidewalk. He had been in good health up to the time of the accident. He had not seen a doctor from 1912 until after the accident, except for a hernia operation 18 or 20 years prior thereto. About three months prior to the accident, in Carew & English's basement, while coming out of the garage into the trimming room after cleaning his car, he felt a weak spell, went down, but got right up again, not losing consciousness. He immediately felt all right. Prior to the accident he had never had a fainting spell. Starting a couple of days after the accident he consulted doctors who treated him for strained heart muscles. Liddle had driven continuously for 30 years. Carew testified that Liddle appeared to be in vigorous health and worked on his car every day.

Plaintiff called Police Officer Kennedy, who testified that at the emergency hospital following the accident, and after

---

[1] While the defendants contended that Liddle was an independent contractor, the court instructed the jury that he was the agent of the corporation. It is therefore unnecessary to detail the facts concerning that relationship.

a doctor had stated that Liddle had a heart condition, Liddle stated that the accident happened because he had "passed out"; that he had not had heart attacks before but "he had suffered dizzy spells" and that he was not going to drive again.

Plaintiff's witness Police Officer Leahy testified concerning an accident that occurred June 21, 1944, approximately one year before the one in question here. Liddle stated to him that he was driving north on 25th Avenue and as he came to Judah Street he saw a truck coming toward him. He was watching this truck "and then he didn't know what happened, the next thing he knew a street car hit" his automobile. Liddle admitted this accident and stated that he was driving for Carew & English at the time; that a tool house on the corner obscured his view at first, and that he turned his wheel to get away from the car and it scraped his fender. He denied that he told the officer he did not see the streetcar and did not know what happened.

### EVIDENCE SUFFICIENT

█ California has approved the rule of *Cohen* v. *Petty*, 65 F.2d 820, that as between an innocent passenger and an innocent fainting driver, the former must suffer. (*Waters* v. *Pacific Coast Dairy, Inc.*, 55 Cal.App.2d 789 [131 P.2d 588].) █ The employer, even if a carrier, is not an insurer. Liability is predicated upon negligence. While a strong argument can be made against the policy of the rule,[1] if the liability of carriers is to be increased to that of an insurer in such cases, such increased liability should be imposed by the Legislature. In the absence of statute, such liability can only exist where there is negligence. █ That means that the main question to be determined is whether there is substantial evidence to support the implied finding that such attack was unanticipated by defendants. Or, to put it another way, the case having been tried and the jury instructed upon the theory of res ipsa loquitur, did the defendants meet the burden placed upon them of proving nonanticipation, bearing in mind that, as carriers, the standard of care required of them was that of utmost care?

Preliminarily, two contentions of plaintiff should be disposed of: First, plaintiff states that the accident may have been caused, not by a heart attack or fainting, but by mental

[1]See concurring opinion of Justice Traynor in *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 461 [150 P.2d 436], discussing a somewhat analogous situation—the liability of manufacturers for injury caused by defective products.

abstraction or plain inattention upon the part of the driver. However, the driver testified otherwise. There was no testimony to the contrary, although a contrary inference could be drawn from Liddle's position at the wheel and his immediate recovery from the attack. The jury found that Liddle did suffer such an attack. We cannot say, as matter of law, that the driver did not have the attack he claims to have had. While defendants could have called the doctors who examined Liddle after the accident to support his testimony that he did have such attack, we cannot say as matter of law that Liddle's own testimony, *believed by the jury*, is not sufficient to meet the burden cast on defendants of proving the cause of the accident.

■ Secondly, plaintiff contends that Carew & English did not discharge their degree of utmost care by not questioning Liddle's driving ability or the cause of prior accidents. Under the court's instructions in this case, Liddle's knowledge was the knowledge of Carew & English, so that if Liddle knew of any condition which should have caused him to anticipate a fainting spell, Carew & English were bound by such condition, whether or not they made any inquiry.

■ This brings us to plaintiff's main contention, namely, that defendants did not meet the burden of showing nonanticipation. Plaintiff contends that as matter of law, the evidence shows that defendants should have anticipated such an attack. This evidence is: (1) the driver was 67 years of age; (2) three months prior, he had a falling spell; (3) a year previously he had an accident as to which a policeman testified that Liddle had said he did not know what happened, a statement which Liddle denied, and the cause of which accident he explained; (4) that another policeman stated that after the accident here, Liddle stated that he had had prior dizzy *spells*, which Liddle denied; (5) after the accident it appeared that Liddle had strained heart muscles. Had the jury found that the interpretation placed on these circumstances by plaintiff was the correct one, we would have to hold that there was evidence to support it, but we cannot say that the jury's interpretation to the contrary is not also a reasonable one, particularly as much of it is based upon a contradiction of evidence as to which the jury evidently believed defendants' version. Nor can we say that the failure of defendants to call Liddle's doctors to corroborate his story necessitates our holding as matter of law that Liddle (and hence, Carew & English) should have anticipated the attack in question.

Plaintiff relies greatly on *Waters* v. *Pacific Coast Dairy, Inc., supra* (55 Cal.App.2d 789), for her contention that defendants failed to meet the burden placed upon them by the res ipsa doctrine. In that case a truck driver was on the wrong side of the highway when he struck the victim. This violation of the Vehicle Code raised an inference of negligence. The jury found for plaintiff, and on appeal the judgment was affirmed. Plaintiff here quotes the opinion in the Waters case as though it were authority for the proposition that *as a matter of law* defendants there failed to dispel the presumption of negligence. Actually the decision in the Waters case was that it was for the jury to determine whether or not the presumption had been dispelled, and that the jury found that it had not been dispelled. In that case the driver claimed that the accident was caused by his becoming unconscious at the wheel. At first he had thought he had had a heart attack, but doctors who examined him immediately and for some time after the accident assured him his heart was all right. He was positive he did not go to sleep, and was equally positive that he had become unconscious. But the defendants made no explanation of what could have caused him to become unconscious, the burden of showing which the court held to be on the defendants. The court held that both the question of whether the driver was telling the truth as to the cause of the accident and whether the proof of defendants as to the cause of the attack, if he had one, and whether such attack could have been anticipated, overcame the presumption raised by the doctrine of res ipsa loquitur, were questions of fact for the jury. In our case the evidence showed that the cause of the attack was strained heart muscles. The jury evidently believed that was the cause.

The decision in *Dierman* v. *Providence Hospital*, 31 Cal.2d 290 [188 P.2d 12], is not applicable here. In that case it was held that the defendants did not meet the burden placed upon them of explaining what caused the explosion which injured plaintiff while she was on the operating table, principally because the defendants, after themselves establishing the probability that it was caused by an impure, dangerous anesthetizing agent which was in their exclusive possession and control, failed to account for the impurity. Here the defendants did account not only for the happening of the accident, but for the cause of the attack, which, according to the finding of the jury, was the real cause. As said in *Druzanich* v. *Criley*, 19 Cal.2d 439, 444 [122 P.2d 53]: "The application of the doc-

trine does not give a plaintiff an absolute right to a judgment in every case. [Citing cases.] It does not shift the burden of proof, and when the defendant produces evidence to rebut the inference of negligence, it is ordinarily a question of fact whether the inference has been dispelled. [Citing cases.]'' (See, also, *Escola* v. *Coca Cola Bottling Co., supra,* 24 Cal.2d 453, at p. 461.)

### EXCLUSION OF EVIDENCE

██ On cross-examination under section 2055 of the Code of Civil Procedure, Liddle had admitted the collision with a streetcar in 1944. He was then asked if in February, 1942, while driving a Carew & English car, he had an accident. He denied positively that he had. As part of her case in chief plaintiff called Police Officer Carrick. After he testified to his name and address, Mr. Bronson, counsel for Carew & English, interrupted, and asked Mr. Belli, counsel for plaintiff, the following question: "May I interrupt . . . to inquire of counsel whether the testimony he intends to elicit from the witness he has just called is of some prior accident in which the physical condition of Mr. Liddle was involved in the accident, that is, any fainting or dizziness or anything of that sort?" Then followed: "MR. BELLI: That is one reason, and the other reason is to impeach Mr. Liddle, that he had had no accident in 1942; we are going to introduce a record to show that there was not only a police report on it, but I believe a citation, too. MR. BRONSON: In that event, if your Honor please—I mean, let's get the answer to the first question: Is counsel intending, by this witness, to produce evidence of a physical impairment in Mr. Liddle, by the testimony of this witness? That is, of the kind involved here, or any other kind, that would affect his driving. MR. BELLI: I think it is sufficient to impeach Mr. Liddle on his testimony. MR. BRONSON: Let's get an answer to it first, because I intend to make a motion. I say there is a false issue been injected in this case. There is only one issue involved, that is, whether or not this man had a prior condition that he was aware of, that affected his driving; that is, a physical condition of fainting or dizziness or passing out, or anything of that sort, and I say, if your Honor please, as I do with respect to the testimony of Officer Leahy yesterday, there is absolutely a false issue in this case, and the jury has been misled. We are not trying a negligence action in the sense of carelessness in the operation, of speed or anything of that sort, and you can't get a fair trial out of that

on this issue." At this point the jury was excused. Then followed a discussion between counsel and the court which covers approximately 12 pages of the transcript, during which Mr. Belli made an offer of proof to the effect that the police officer then on the stand would testify that on February 4, 1942, Liddle, driving for Carew & English the same limousine involved in the accident here, struck a pedestrian and stated that he did not see the pedestrian until he hit her. Mr. Belli was reading from a police report. Mr. Bronson then read what he claimed the former had omitted: "the driver (1) stated that he didn't see the pedestrian until he hit her, and the pedestrian stated that she didn't see the automobile," and, " 'Condition of the driver and pedestrian: Apparently normal' is checked." During the discussion the court stated, in effect, that the doctrine of res ipsa loquitur threw the burden on the defendants, and that as defendant had only testified under section 2055, plaintiff was "anticipating evidence" at this time. While, during this discussion, Mr. Belli contended that he was entitled to introduce this evidence, for the additional reason that Liddle had denied having had such an accident, it is evident from the complete discussion and the remarks of the court in ruling, that it had in mind only the order of proof under res ipsa loquitur. Mr. Belli stated: "We will withdraw the witness at this time. I think the whole reason it came up originally was, rather than rely on res ipsa loquitur, we went further." Later in the same discussion Mr. Belli said: "If your Honor feels that this other one [the 1942 accident] is not admissible at this time, I think we certainly will renew it later on our case, because there are certain elements in our case that we must prove." The court further stated: "You put a man on the stand, and you are not bound by the testimony; you build up a straw man from him. There is nothing to indicate in the case thus far, except the statement of counsel, that there is any claim—and particularly that is true as far as Carew & English is concerned —there is no claim on their part that this man had a fit or anything else. He may come in here with a straight denial that something happened. I don't know what kind of defense he may have. But you bring him in on 2055 and build up a straw man, and we get ourselves in hot water—it may be that after the evidence is in, certain things develop that may be subject to contradiction, by the methods you propose. . . . The court has already ruled on the offer you have made. It has been rejected. Call in the jury." Following that Mr,

Belli requested that the police report be marked for identification for what it might be worth. Thereafter plaintiff did not recall the witness or make any offer with reference to the police report.

It is obvious from the discussion that the court felt, not that the evidence was inadmissible, but inadmissible at that particular time in the case, and that plaintiff acquiesced in the ruling, in stating that he would renew the offer later, and in withdrawing the witness. The court felt that the burden was not on the plaintiff of proving that the accident could have been foreseen, but on the defendants of proving that it could *not* have been foreseen, and that at that stage of the trial, the plaintiff was doing something not then required of her.

The trial court, of course, has a wide discretion in directing the order in which evidence shall be submitted. (Code Civ. Proc., § 2042.) Even though the court were in error as to its ruling on the time of making such proof, it left the door open for plaintiff to produce the evidence later, and having failed to enter that door, she cannot now complain.

## INSTRUCTIONS

■ Plaintiff contends that the court instructed that the burden of showing anticipation was on the plaintiff. There is no such instruction. On the contrary, the court instructed that from the happening of the accident here, there arose an inference that its proximate cause was negligence of defendants, and that a heart attack of Liddle would not be a defense unless he and Carew & English had no reason to anticipate such an attack, the burden of proving which was on the defendants.

■ Plaintiff objects to an unavoidable accident instruction in the usual form, contending that as the court had already told the jury that defendants were not responsible if they did not anticipate the heart attack, such instruction was repetitious and argumentative. There was no error in giving the instruction. Under the authority of *Cohen v. Petty, supra* (65 F.2d 820), if the jury believed that the accident was without any negligence of defendants and due to an unanticipated heart attack of Liddle, it would be an unavoidable accident.

■ There was no error in giving the instruction that Liddle was not an insurer of plaintiff's safety, but was required to use the highest care that reasonably could have

been used. Plaintiff cites *Formosa* v. *Yellow Cab Co.*, 31 Cal. App.2d 77 [87 P.2d 716], as authority that the giving of this instruction was prejudicially erroneous. All that case holds is that the failure to give such an instruction, under the circumstances of that case, in an action against a taxicab company for injuries received by one of its passengers, was not erroneous. In view of the claimed cause of the accident here, and the application by the court of the res ipsa loquitur doctrine, this instruction was proper.

■ Plaintiff offered an instruction to the effect that it was Carew & English's duty to inquire as to the physical condition of Liddle. Inasmuch as under the court's instruction, Carew & English were bound by any knowledge that Liddle may have had of any condition that affected his driving ability, such instruction was not necessary. It would have lessened Carew & English's liability in making them responsible for their own knowledge rather than Liddle's. Moreover, the instruction was wrong in another particular. The court had already instructed the jury as a matter of law that Liddle was the agent of Carew & English. The proposed instruction started out: "If you find from the facts in this case that defendant George Liddle was the agent of Carew & English, acting within the course and scope of his authority . . ." As the trial judge noted on the instruction, this was "not an issue."

■ In view of the instructions to the effect that the burden was on the defendants to rebut the presumption of negligence, there was no error in refusing the following instruction: "You are instructed that it is not necessary in order for plaintiff to prove her cause of action that she prove defendants did anything wilfully or wantonly. The gravemen of the complaint is negligence and negligence only. This is a civil case, not a criminal one." As stated by the trial judge, it was "unnecessary."

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 14, 1949.