[Civ. No. 5954.   Fourth Dist.   Mar. 6, 1959.]

GRACE N. MULLEN, Plaintiff and Appellant, v. MAR-
GARET BRUCE, Defendant and Appellant.

Rimel & Johnston for Plaintiff and Appellant.

Jacobs, Jacobs, Hayden & Nelson and M. Lyle Nelson for Defendant and Appellant.

GRIFFIN, P. J.—Plaintiff Grace N. Mullen filed this action against defendant Margaret Bruce alleging generally that on January 25, 1955, defendant assaulted her and negligently caused her to fall to the floor and that she suffered a fractured right shoulder and sustained multiple bruises. General damages in the sum of $30,000 and special damages in the sum of $3,371.50 are alleged. After denial of these allegations, defendant alleges, by way of defense, assumption of risk by plaintiff and unlawful restraint of defendant by plaintiff. The trial court, sitting without a jury, gave judgment for plaintiff for $3,500. Defendant appeals from the judgment on the ground the evidence conclusively shows: (1) implied consent or assumption of risk on plaintiff's part; (2) that the injuries sustained by plaintiff were not proximately caused or the direct result of the assault upon her by defendant. Plaintiff appeals on the ground that the damages awarded were insufficient as a matter of law, and seeks to have this court, under section 53 of the Code of Civil Procedure, fix plaintiff's damages in a reasonable amount and to direct the trial court to enter judgment accordingly.

The material facts are brief, and little, if any, conflict is noted. Plaintiff was a registered nurse and was called at about 11 p. m. of the night in question for special duty by the Santa Maria Convalescent Home or sanitarium to take care of defendant, a patient, who was there suffering from alcoholism. On entering the sanitarium she went to the desk, received her orders, and noticed the patient's chart. She was informed that the patient was in delirium tremens; that she would probably have a rough night with her; that she was violent and unmanageable; and that the nurse did not envy her position. When plaintiff arrived in the patient's room defendant was in a bed with the side rails up. Later that night the patient requested to go to the bathroom. Plaintiff allowed her to do so. Thereafter, the patient insisted she was going home in her gown. She was carrying her cosmetic bag (size about 8″x10″x 15″). After some encounter she was coaxed back to her bed by a priest. Her attending doctor was called and he administered medication (5 per cent alcohol intravenously over a period of several hours). Early in the morning the patient manifested great disturbance and asked to be allowed to go to

the bathroom again. In the course of her tour, dressed in her gown, barefooted, and carrying her cosmetic bag, she again insisted on going home. The patient struggled with plaintiff in her attempt to carry out her threat, and plaintiff endeavored to restrain her by grasping her left wrist and holding onto the door jam. The patient jerked and shoved her and did, or endeavored to, strike her with the cosmetic bag. In the struggle defendant tripped plaintiff and in some fashion she was knocked to the floor and suffered a severe fracture of the shoulder and the upper part of the humerus. By other assistants defendant was subdued and replaced in her bed. Plaintiff was taken to the hospital and later contracted considerable medical, X-ray and other bills in effecting a recovery, and lost considerable time from future employment.

Plaintiff stated that after the first encounter and also after the second one she was of the opinon that defendant acted irrational and was unaccountable. At the trial defendant testified she did not remember being at the sanitarium and did not remember any such fracas or injury to plaintiff.

The trial court found generally that defendant assaulted plaintiff and caused her injury which was permanent in nature; that plaintiff did not assume the risk incident to caring for defendant and was not contributorily negligent; that plaintiff did not unlawfully or illegally restrain defendant nor assault her but on the contrary was acting in accordance with the obligation she had assumed toward defendant in attempting to care for her. Judgment was entered accordingly.

Section 41 of the Civil Code provides: "A minor, or person of unsound mind, of whatever degree, is civilly liable for a wrong done by him, but is not liable in exemplary damages unless at the time of the act he was capable of knowing that it was wrongful." That defendant was of unsound mind, to a certain degree, at the time, cannot be well disputed. She would therefore be a person coming within the provisions of said section. A child of the age of 4 years, charged in a civil action with battery, was held to come within the provisions of this section. (*Ellis* v. *D'Angelo*, 116 Cal.App.2d 310 [253 P.2d 675].) See also *Singer* v. *Marx*, 144 Cal.App. 2d 637 [301 P.2d 440]. Section 41, *supra*, is a codification of the common-law rule. (*Ross* v. *York*, (Tex.Civ.App.) 233 S.W.2d 347; *Elliott* v. *Sternberg*, 61 N.Y.S.2d 73.) No California case is cited involving civil liability for battery, tortious conduct, or the negligence or wrong done by a person of unsound mind. In *McGuire* v. *Almy*, 297 Mass. 323 [8 N.E.2d

760], it appears that for over a period of some 14 months a nurse had been employed to care for the defendant, an insane person. Occasionally the defendant had violent spells. On the occasion when plaintiff was injured the defendant was breaking furniture. Plaintiff approached her and was struck by her with one of the furniture legs. In disposing of the questions, at page 762 the court said:

"Turning to authorities elsewhere, we find that courts in this country almost invariably say in the broadest terms that an insane person is liable for his tort. As a rule no distinction is made between those torts which would ordinarily be classed as intentional and those which would ordinarily be classed as negligent . . ." Then at page 763, it is said:

"We think that the danger of actual physical injury was not, *as a matter of law,* plain and obvious up to the time when *the plaintiff* entered *the room* on the occasion of the assault. But by that time an emergency had been created. The defendant was breaking up the furniture and it could have been found that the plaintiff reasonably feared that the defendant would do harm to herself. Something had to be done about it. The plaintiff had assumed the duty of caring for the defendant. We think that a reasonable attempt on her part to perform that duty under the peculiar circumstances brought about by the defendant's own act did not necessarily indicate a voluntary consent to be injured. Consent does not always follow from the intentional incurring of risk."

There seems to be no apparent distinction in principle between such a person and a 4-year-old child insofar as it bears on the question here involved. ■ In *Ellis* v. *D'Angelo, supra,* it was held that section 41 indicates clearly that the Legislature intended that a minor or person of unsound mind should be liable in compensatory damages for his tortious conduct even though he was not capable of knowing the wrongful character of his act at the time he committed it. ■ Whether the defendant had sufficient capacity to intend the violent conduct essential to the commission of battery was a factual question for the trial judge. An infant is liable for his torts even though he lacks the mental development and capacity to recognize the wrongfulness of his conduct so long as he has the mental capacity to have the state of mind necessary to the commission of the particular tort with which he is charged. The finding of the trial court in this respect has evidentiary support.

■ It cannot be said, from the evidence, as a matter of law, that plaintiff assumed the risk which here resulted in her injury. This was a factual question for the determination of the court. (*Ching Yee* v. *Dy Foon*, 143 Cal.App.2d 129, 138 [299 P.2d 668]; *DeGraf* v. *Anglo California Nat. Bank,* 14 Cal.2d 87, 101 [92 P.2d 899].)

Plaintiff, when first called, was not informed of any danger that might result in accepting the assignment. She was registered at this sanitarium as being subject to call for private duty. When informed of the fact at the sanitarium that defendant patient had delirium tremens she could have refused the case but this may well have affected her standing with the sanitarium and medical profession in the future, respecting other calls. She had been called to duty at that sanitarium on previous cases for the care of such patients without being assaulted, and she may well not have realized, from what was told her, that she would be thus treated if she accepted the professional duty assigned to her.

In *Ching Yee* v. *Dy Foon, supra,* it was held that an instruction there given on this subject was proper. It was there said:

"First, the person in question must have actual knowledge of the danger. Second, she must have freedom of choice. This freedom of choice must come from circumstances that provide her a reasonable opportunity, without violating any legal or moral duty, to safely refuse to expose herself to the danger in question."

This question was one of fact and was specifically decided against the defendant. (See also 35 Cal.Jur.2d 814, § 266.)

■ The burden of proof of assumption of risk was on defendant. (*Kreitzer* v. *Southern Pac. Co.*, 38 Cal.App. 654 [177 P. 477].)

The finding that the act of defendant was the proximate cause of plaintiff's injuries has sufficient evidentiary support.

Plaintiff's claim that the judgment awarded was insufficient as a matter of law is not meritorious. The question was one of fact for the determination of the trial court and the evidence supports the finding.

Judgment affirmed.

Mussell, J., and Shepard, J., concurred.

A petition for a rehearing was denied March 30, 1959, and the petition of defendant and appellant for a hearing by the Supreme Court was denied April 29, 1959.