[Civ. No. 38197. Second Dist., Div. One. Oct. 14, 1971.]

MAXINE HAMMONTREE et al., Plaintiffs and Appellants, v. THOMAS H. JENNER, Defendant and Respondent.

## COUNSEL

Hurley & Hurley and Joseph G. Hurley for Plaintiffs and Appellants.

LaFollette, Johnson, Horgan & Robinson, Patrick J. Hast, Horvitz & Minikes, Ellis J. Horvitz and Morton Minikes for Defendant and Respondent.

## OPINION

**LILLIE, J.**—Plaintiffs Maxine Hammontree and her husband sued defendant for personal injuries and property damage arising out of an automobile

accident. The cause was tried to a jury. Plaintiffs appeal from judgment entered on a jury verdict returned against them and in favor of defendant.

The evidence shows that on the afternoon of April 25, 1967, defendant was driving his 1959 Chevrolet home from work; at the same time plaintiff Maxine Hammontree was working in a bicycle shop owned and operated by her and her husband; without warning defendant's car crashed through the wall of the shop, struck Maxine and caused personal injuries and damage to the shop.

Defendant claimed he became unconscious during an epileptic seizure losing control of his car. He did not recall the accident but his last recollection before it, was leaving a stop light after his last stop, and his first recollection after the accident was being taken out of his car in plaintiffs' shop. Defendant testified he has a medical history of epilepsy and knows of no other reason for his loss of consciousness except an epileptic seizure; prior to 1952 he had been examined by several neurologists whose conclusion was that the condition could be controlled and who placed him on medication; in 1952 he suffered a seizure while fishing; several days later he went to Dr. Benson Hyatt who diagnosed his condition as petit mal seizure and kept him on the same medication; thereafter he saw Dr. Hyatt every six months and then on a yearly basis several years prior to 1967; in 1953 he had another seizure, was told he was an epileptic and continued his medication; in 1954 Dr. Kershner prescribed dilantin and in 1955 Dr. Hyatt prescribed phelantin; from 1955 until the accident occurred (1967) defendant had used phelantin on a regular basis which controlled his condition; defendant has continued to take medication as prescribed by his physician and has done everything his doctors told him to do to avoid a seizure; he had no inkling or warning that he was about to have a seizure prior to the occurrence of the accident.

In 1955 or 1956 the Department of Motor Vehicles was advised that defendant was an epileptic and placed him on probation under which every six months he had to report to the doctor who was required to advise it in writing of defendant's condition. In 1960 his probation was changed to a once-a-year report.

Dr. Hyatt testified that during the times he saw defendant, and according to his history, defendant "was doing normally" and that he continued to take phelantin; that "[t]he purpose of the [phelantin] would be to react on the nervous system in such a way that where, without the medication, I would say to raise the threshold so that he would not be as subject to these episodes without the medication, so as not to have the seizures. He *would not be* having the seizures with the medication as he would without

the medication compared to taking medication"; in a seizure it would be impossible for a person to drive and control an automobile; he believed it was safe for defendant to drive.

■ Appellants' contentions that the trial court erred in refusing to grant their motion for summary judgment on the issue of liability and their motion for directed verdict on the pleadings and counsel's opening argument are answered by the disposition of their third claim that the trial court committed prejudicial error in refusing to give their jury instruction on absolute liability.[1]

Under the present state of the law found in appellate authorities beginning with *Waters* v. *Pacific Coast Dairy, Inc.,* 55 Cal.App.2d 789, 791-793 [131 P.2d 588] (driver rendered unconscious from sharp pain in left arm and shoulder) through *Ford* v. *Carew & English,* 89 Cal.App.2d 199, 203-204 [200 P.2d 828] (fainting spells from strained heart muscles), *Zabunoff* v. *Walker,* 192 Cal.App.2d 8, 11 [13 Cal.Rptr. 463] (sudden sneeze), and *Tannyhill* v. *Pacific Motor Trans. Co.,* 227 Cal.App.2d 512, 520 [38 Cal.Rptr. 774] (heart attack), the trial judge properly refused the instruction. The foregoing cases generally hold that liability of a driver, suddenly stricken by an illness rendering him unconscious, for injury resulting from an accident occurring during that time rests on principles of negligence. However, herein during the trial plaintiffs withdrew their claim of negligence and, after both parties rested and before jury argument, objected to the giving of any instructions on negligence electing to stand solely on the theory of absolute liability. The objection was overruled and the court refused plaintiffs' requested instruction after which plaintiffs waived both opening and closing jury arguments. Defendant argued the cause to the jury after which the judge read a series of negligence instructions and, on his own motion, BAJI 4.02 (res ipsa loquitur).

Appellants seek to have this court override the established law of this state which is dispositive of the issue before us as outmoded in today's social and economic structure, particularly in the light of the now recognized principles imposing liability upon the manufacturer, retailer and all distributive and vending elements and activities which bring a product to the consumer to his injury, on the basis of strict liability in tort expressed first in Justice Traynor's concurring opinion in *Escola* v. *Coca Cola Bot-*

---

[1]"When the evidence shows that a driver of a motor vehicle on a public street or highway loses his ability to safely operate and control such vehicle because of some seizure or health failure, that driver is nevertheless legally liable for all injuries and property damage which an innocent person may suffer as a proximate result of the defendant's inability to so control or operate his motor vehicle.

"This is true even if you find the defendant driver had no warning of any such impending seizure or health failure."

*tling Co.,* 24 Cal.2d 453, 461-468 [150 P.2d 436]; and then in *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168]; and *Elmore* v. *American Motors Corp.,* 70 Cal.2d 578 [75 Cal.Rptr. 652, 451 P.2d 84]. These authorities hold that "A manufacturer [or retailer] is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d 57, 62; *Vandermark* v. *Ford Motor Co., supra,* 61 Cal.2d 256, 260-261.) Drawing a parallel with these products liability cases, appellants argue, with some degree of logic, that only the driver affected by a physical condition which could suddenly render him unconscious and who is aware of that condition can anticipate the hazards and foresee the dangers involved in his operation of a motor vehicle, and that the liability of those who by reason of seizure or heart failure or some other physical condition lose the ability to safely operate and control a motor vehicle resulting in injury to an innocent person should be predicated on strict liability.

We decline to superimpose the absolute liability of products liability cases upon drivers under the circumstances here. The theory on which those cases are predicated is that manufacturers, retailers and distributors of products are engaged in the business of distributing goods to the public and are an integral part of the over-all producing and marketing enterprise that should bear the cost of injuries from defective parts. (*Vandermark* v. *Ford Motor Co.,* 61 Cal.2d 256, 262 [37 Cal.Rptr. 896, 391 P.2d 168]; *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57, 63 [27 Cal. Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].) This policy hardly applies here and it is not enough to simply say, as do appellants, that the insurance carriers should be the ones to bear the cost of injuries to innocent victims on a strict liability basis. In *Maloney* v. *Rath,* 69 Cal.2d 442 [71 Cal.Rptr. 897, 445 P.2d 513], followed by *Clark* v. *Dziabas,* 69 Cal.2d 449 [71 Cal. Rptr. 901, 445 P.2d 517], appellant urged that defendant's violation of a safety provision (defective brakes) of the Vehicle Code makes the violator strictly liable for damages caused by the violation. While reversing the judgment for defendant upon another ground, the California Supreme Court refused to apply the doctrine of strict liability to automobile drivers. The situation involved two users of the highway but the problems of fixing responsibility under a system of strict liability are as complicated in the instant case as those in *Maloney* v. *Rath* (p. 447), and could only create uncertainty in the area of its concern. As stated in *Maloney,* at page 446: "To invoke a rule of strict liability on users of the streets and highways, however, without also establishing in substantial detail how the

new rule should operate would only contribute confusion to the automobile accident problem. Settlement and claims adjustment procedures would become chaotic until the new rules were worked out on a case-by-case basis, and the hardships of delayed compensation would be seriously intensified. Only the Legislature, if it deems it wise to do so, can avoid such difficulties by enacting a comprehensive plan for the compensation of automobile accident victims in place of or in addition to the law of negligence."

The instruction tendered by appellants was properly refused for still another reason. Even assuming the merit of appellants' position under the facts of this case in which defendant knew he had a history of epilepsy, previously had suffered seizures and at the time of the accident was attempting to control the condition by medication, the instruction does not except from its ambit the driver who suddenly is stricken by an illness or physical condition which he had no reason whatever to anticipate and of which he had no prior knowledge.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 16, 1971.