[No. F022797. Fifth Dist. May 23, 1996.]

MUBARAK BASHI et al., Plaintiffs and Appellants, v.
MARGIE MARIE WODARZ, Defendant and Respondent.

**COUNSEL**

Ralph J. Rubenstein for Plaintiffs and Appellants.

Clifford & Brown, Michael L. O'Dell and Stephen P. Wainer for Defendant and Respondent.

**OPINION**

**ARDAIZ, P. J.**—Defendant and respondent, Margie Marie Wodarz, was involved in a rear-end auto accident with a third party. According to the traffic collision report, respondent left the scene without stopping. A short time later, respondent was involved in a second automobile accident with the plaintiffs and appellants, Mubarak Bashi and Nasim Akhtar.

Respondent has little recollection of either event occurring. According to the traffic report, respondent engaged in some "bizarre" behavior before and after the collision with appellants. Under the heading of "Statement of Witnesses and Remarks" the traffic report contains the following remarks with respect to respondent's statement: ". . . Somewhere, shortly after making the turn, she stated, 'I wigged out.' She stated that all she could remember was ramming into the back of someone's vehicle and then continuing east. She had no control of her actions at that time and then she remembered being involved in a second collision at an unknown location on White Lane. She also stated, 'My family has a history of mental problems and I guess I just freaked out.' "

Appellants filed a complaint for negligence. At nonbinding arbitration, appellants' claims were denied. The arbitrator made the following comments in support of his decision:

"Although a rear-end collision was involved whereby the Plaintiffs' vehicle was struck by Defendant's vehicle, Defendant produced unrebutted

medical expert evidence (Declaration of Terry Lanes, M.D.) indicating the accident was unavoidable due to the Defendant's 'Sudden, unanticipated onset of mental illness' shortly before the impact.

"This evidence was also supported by the traffic accident report setting forth the actions and comments by the Defendant driver, Margie Marie Wodarz, immediately prior to and subsequent to the subject accident indicating uncontrollable mental illness of which the Defendant has no prior warning.

"Accordingly, under such circumstances, the Plaintiffs' claim is denied."

Appellants timely filed a request for trial de novo. Appellants' subsequent motion to reopen discovery, supported by counsel's declaration that the defense of a sudden onset of mental illness was "a complete surprise," was denied.

Thereafter, respondent filed a motion for summary judgment pursuant to Code of Civil Procedure section 437c, arguing that due to the sudden, unanticipated mental disorder, respondent was not negligent as a matter of law and that no triable issue of material fact existed with respect to the issue that respondent was afflicted by the unforeseen onset of the mental disorder. Respondent's motion was granted. Appellants filed a timely notice of appeal from the judgment of dismissal.

DISCUSSION

### A. Standard of Review

On appeal from a summary judgment, ". . . it is the task of the reviewing court to determine whether the moving party has established facts which negate the opponent's claims and whether a triable issue of material fact has been shown." (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1515 [285 Cal.Rptr. 385].)

When summary judgment is granted in favor of the defendant, the defendant must either establish an affirmative defense to the cause of action or disprove at least one essential element of the cause of action. (Code Civ. Proc., § 437c, subd. (n).)

This court recently summarized the standard of review as follows:

"Summary judgment is proper if the supporting papers are sufficient to sustain a judgment in favor of the moving party as a matter of law and the

opposing party presents no evidence giving rise to a triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c).) To prevail on a summary judgment motion, the defendant must conclusively negate a necessary element of the plaintiff's case or establish a complete defense. [Citation.] Where the evidence presented by defendant does not support judgment in his favor, the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff. [Citation.] The evidence of the moving party is strictly construed and that of the opposing party liberally construed. [Citation.] Where there is no material issue of fact to be tried and the sole question before the court is one of law, it is the duty of the trial court on a motion for summary judgment to hear and determine the issue of law. [Citation.]

"In reviewing a grant of summary judgment, an appellate court must make its own independent determination of the construction and effect of the papers submitted. Review of the trial court's determination involves pure matters of law and requires reassessment of the legal significance of the documents. The reviewing court applies the same three-step analysis as that of the trial court: (1) identification of issues framed by the pleadings; (2) determination of whether the moving party has established facts which negate the opponent's claim and justify a judgment in movant's favor; and (3) determination of whether the opponent demonstrates the existence of a triable, material factual issue. [Citations.]" (*Varni Bros. Corp.* v. *Wine World, Inc.* (1995) 35 Cal.App.4th 880, 886-887 [41 Cal.Rptr.2d 740].)

### B. *Is sudden onset of mental illness a defense to negligent operation of a motor vehicle?*

In order to affirm the trial court's granting of the summary judgment motion at issue, we must first identify the issues framed by the pleadings. In this case, the appellants filed a simple form complaint for negligent operation of a motor vehicle.

Secondly, we must determine whether the respondent's showing in the trial court established facts which negate the appellants' claim and justify a judgment in respondent's favor. At the trial court, respondent contended that due to respondent's sudden, unanticipated mental disorder, respondent was not negligent as a matter of law. Whether the sudden onset of mental illness is a defense to a negligence action in California is pivotal to the correctness of the trial court's ruling.

"California has approved the rule of *Cohen* v. *Petty* [(D.C. Cir. 1933)] 65 F.2d 820 [62 App.D.C. 187], that as between an innocent passenger and an innocent fainting driver, the former must suffer." (*Ford* v. *Carew*

& *English* (1948) 89 Cal.App.2d 199, 203 [200 P.2d 828], citing *Waters* v. *Pacific Coast Dairy, Inc.* (1942) 55 Cal.App.2d 789 [131 P.2d 588].)

Under a line of appellate authorities beginning with *Waters* in 1942, these cases generally hold that a driver, suddenly stricken by an illness rendering the driver unconscious, is not chargeable with negligence. (*Waters* v. *Pacific Coast Dairy, Inc., supra,* 55 Cal.App.2d at pp. 791-793 [driver rendered unconscious from sharp pain in left arm]; *Ford* v. *Carew & English, supra,* 89 Cal.App.2d at pp. 203-204 [fainting spell from strained heart muscle]; *Zabunoff* v. *Walker* (1961) 192 Cal.App.2d 8, 11 [13 Cal.Rptr. 463] [jurors could have concluded that a sudden sneeze was an intervening cause similar to a fainting spell]; *Tannyhill* v. *Pacific Motor Trans. Co.* (1964) 227 Cal.App.2d 512, 520 [38 Cal.Rptr. 774] [heart attack]; *Hammontree* v. *Jenner* (1971) 20 Cal.App.3d 528, 530-531 [97 Cal.Rptr. 739] [loss of consciousness due to unexpected epileptic seizure].)

Although the driver in the *Cohen* case suffered a sudden illness rendering him unconscious, the court generally stated the rule regarding the effect of a sudden illness as follows: "It is undoubtedly the law that one who is suddenly stricken by an illness, which he had no reason to anticipate, while driving an automobile, which renders it impossible for him to control the car, is not chargeable with negligence." (*Cohen* v. *Petty* (D.C. Cir. 1993) 65 F.2d 820, 821 [62 App.D.C. 187].)

Respondent admits that "no prior California decisions have decided whether the [*Cohen*] rule also applies when defendant suffers a sudden and unanticipated mental, as opposed to physical illness." Respondent urges this court to extend the *Cohen* rule to any sudden "illness," without distinction between physical and mental illness. She argues that the public policy rationale would remain the same; "i.e., as between an innocent injured party and an innocent ill driver, the innocent injured party must suffer." The basis behind the *Cohen* rule is related to the general concept of " 'unavoidable accident.' " (6 Witkin, Summary of Cal. Law (9th ed. 1990) Torts, § 759, p. 98.) In California, our Supreme Court has addressed this concept in *Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652 [320 P.2d 500, 65 A.L.R.2d 1]:

"In reality, the so-called defense of unavoidable accident has no legitimate place in our pleading. It appears to be an obsolete remnant from a time when damages for injuries to person or property directly caused by a voluntary act of the defendant could be recovered in an action of trespass and when strict liability would be imposed unless the defendant proved that the injury was caused through 'inevitable accident.' Although exactly what was covered by this expression is not clear, it apparently included cases where the defendant

was utterly without fault. 'Unavoidable accident' was then an affirmative defense to be pleaded and proved by the defendant.

" . . . . . . . . . . . . . . . . . . . . . . . . . . .

" . . . 'unavoidable or inevitable accident' . . . 'simply denote[s] an accident that occurred without having been proximately caused by negligence' . . . ." (49 Cal.2d at pp. 658, 659.)

In effect, the concept of unavoidable accident is predicated upon absence of fault.

After consideration of state and national case law, the rationale behind respondent's argument and the policy consequences, we decline to extend the application of the *Cohen* rule to a sudden and unanticipated mental illness or disorder. (*Cohen v. Petty, supra,* 65 F.2d 820.)

"Mentally disabled persons usually have been classed with infants, and held liable for their torts." (Prosser & Keeton, The Law of Torts (5th ed. 1984) § 135, p. 1072; see 5 Witkin, Summary of Cal. Law, *supra,* Torts, § 26, p. 86.) California is one of the few states to have codified the common law rule by statute. (*Mullen v. Bruce* (1959) 168 Cal.App.2d 494, 496 [335 P.2d 945, 77 A.L.R.2d 620] [Civ. Code, § 41]; see Splane, *Tort Liability of the Mentally Ill in Negligence Actions* (1983) 93 Yale L.J. 153, 155-156 [footnote 17 lists California, Montana, North Dakota, Oklahoma and South Dakota as states which have incorporated the common law into their statutes].)

Civil Code section 41, as originally enacted in 1872, provided: "A minor, or person of unsound mind, of whatever degree, is civilly liable for a wrong done by him, but is not liable in exemplary damages unless at the time of the act he was capable of knowing that it was wrongful."

Respondent concedes that Civil Code section 41 was revised, effective January 1, 1994, making no substantive changes except minors were deleted from its scope. Section 41 of the Civil Code now provides: "A person of unsound mind, of whatever degree, is civilly liable for a wrong done by the person, but is not liable in exemplary damages unless at the time of the act the person was capable of knowing that the act was wrongful." (Added by Stats. 1992, ch. 163, § 3, operative Jan. 1, 1994.)[1]

Prosser and Keeton have commented with respect to criticism of the common law rule (codified in Civ. Code, § 41) that: "So far as negligence

---

[1]Former Civil Code section 41 was repealed by Statutes 1993, chapter 219, section 2, page 1146. The current section 41 continues former Civil Code section 41 without substantial change, insofar as former section 41 related to a person of unsound mind. (22 Cal. Law Revision Com. Rep. (July 1992) p. 747.) With respect to minors, the substance of former Civil Code section 41 is continued in Family Code section 6600. (23 Cal. Law Revision Com. Rep. (Nov. 1993) p. 580.)

is concerned, the common law cases have usually said that an insane person is liable for failure to conform to the standard of conduct of the reasonable person, with the civil law in Louisiana going the other way. But there has been judicial as well as scholarly criticism of the common law rule, and Wisconsin has taken the view, supported by a Canadian decision, that where insanity occurs suddenly and without warning, it is to be treated like a heart attack, so that the insane defendant is not held to the reasonable man standard under those circumstances. . . .

"In the light of these cases, the permanent direction of the law may be in doubt even now." (Prosser & Keeton, The Law of Torts, *supra*, § 135, pp. 1074-1075, fns. omitted.)

However, if the Legislature changes a law in a particular respect and fails to change it in other respects when the subject is generally before it, this is indicative of an intent to leave the law as it stands in the aspects not amended. (*Butigan* v. *Yellow Cab Co.*, *supra*, 49 Cal.2d at p. 666.)

Therefore, despite the criticism of the common law rule by scholars and the judicial decisions of a few other jurisdictions, Civil Code section 41 is evidence of a recent legislative intent to leave the law as it stands in California.

Respondent argues that Civil Code section 41 "speaks in terms of intentional acts, which would be subject to exemplary damages." It is true that section 41 limits the liability of persons of unsound mind for exemplary damages, but it also provides that a "person of unsound mind, *of whatever degree*, is civilly liable for a wrong done by the person." (Italics added.) By its terms, Civil Code section 41 is not limited to intentional torts, but rather applies to all "civil wrongs," including negligence. (See *Brinck* v. *Bradbury* (1918) 179 Cal. 376, 379 [176 P. 690] [incompetent liable for negligent operation of elevator owned by her and operated for her benefit].)

Civil Code section 41 is in accord with the Restatement Second of Torts, published in 1965, which provides in section 283 B: "Unless the actor is a child, his insanity or other mental deficiency does not relieve the actor from liability for conduct which does not conform to the standard of a reasonable man under like circumstances." (Rest.2d Torts, § 283 B, p. 16.)

The comment explaining Restatement Second of Torts section 283 B, found at page 17, provides:

"a. If the actor is a child, his mental deficiency is taken into account. See § 283 A.

"b. The rule that a mentally deficient adult is liable for his torts is an old one, dating back at least to 1616, at a time when the action for trespass rested upon the older basis of strict liability, without regard to any fault of the individual. Apart from mere historical survival, its persistence in modern law has been explained on a number of different grounds. These are as follows:

"1. The difficulty of drawing any satisfactory line between mental deficiency and those variations of temperament, intellect, and emotional balance which cannot, as a practical matter, be taken into account in imposing liability for damage done.

"2. The unsatisfactory character of the evidence of mental deficiency in many cases, together with the ease with which it can be feigned, the difficulties which the triers of fact must encounter in determining its existence, nature, degree, and effect; and some fear of introducing into the law of torts the confusion which has surrounded such a defense in the criminal law. Although this factor may be of decreasing importance with the continued development of medical and psychiatric science, it remains at the present time a major obstacle to any allowance for mental deficiency.

"3. The feeling that if mental defectives are to live in the world they should pay for the damage they do, and that it is better that their wealth, if any, should be used to compensate innocent victims than that it should remain in their hands.

"4. The belief that their liability will mean that those who have charge of them or their estates will be stimulated to look after them, keep them in order, and see that they do not do harm.

"c. Insane persons are commonly held liable for their intentional torts. While there are very few cases, the same rule has been applied to their negligence. As to mental deficiency falling short of insanity, as in the case of stupidity, lack of intelligence, excitability, or proneness to accident, no allowance is made, and the actor is held to the standard of conduct of a reasonable man who is not mentally deficient, even though it is in fact beyond his capacity to conform to it."

Section 283 C, page 18, of the Restatement Second of Torts concerns physical disabilities and provides: "If the actor is ill or otherwise physically disabled, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man under like disability."

Under comment b, page 18, explaining section 283 C, the Restatement Second of Torts discusses the effect of a sudden onset of a "transitory

delirium" as follows: "The same allowance [the reasonable man is identical with the actor] is made for physical, as distinguished from mental, illness. Thus a heart attack, or a temporary dizziness due to fever or nausea, as well as a transitory delirium, are regarded merely as circumstances to be taken into account in determining what the reasonable man would do. The explanation for the distinction between such physical illness and the mental illness dealt with in § 283 B probably lies in the greater public familiarity with the former, and the comparative ease and certainty with which it can be proved."

Although the respondent's sudden onset of mental illness might arguably be classified as a "transitory delirium" under the Restatement, such a classification is unlikely given that the "transitory delirium" is discussed in the comment relating to physical, as opposed to mental, disabilities. (Since the Restatement makes a distinction between physical and mental disabilities, it is more likely that the phrase "transitory delirium" used in the Restatement relates back to the previous phrase regarding the effects of fever.) In any event, in California, even a defendant who was suffering from alcoholism and who was in delirium tremens was found to be a "person of unsound mind" within the purview of Civil Code section 41. (*Mullen* v. *Bruce, supra*, 168 Cal.App.2d at p. 496.)

We conclude that an evidentiary showing that respondent suffered a sudden and unanticipated mental illness which rendered it impossible for her to control her vehicle at the time of the alleged tort does not, as a matter of law, preclude her liability for negligence. This is based on a policy rationale. Clearly the insane or mentally disabled individual is not considered at fault in the traditional sense. However, because such individuals do create harm, the general rationale is that they should be held financially responsible to those they harm. Therefore, mental disability is not a defense. Liability is therefore predicated on an objective reasonable person standard. Unlike the rationale behind suspension of a liability for sudden physical illness which is based on fault, the fault concept is not analogous to a sudden mental disability. Thus, we do not perceive any logical rationale for barring mental illness as a defense to negligence but allowing sudden mental illness as a complete defense. We conclude sudden mental illness may not be posed as a defense to harmful conduct and that the harm caused by such individual's behavior shall be judged on the objective reasonable person standard in the context of a negligence action as expressed in Civil Code section 41.

Applying tort principles in the criminal context, this conclusion is supported by criminal decisions in this state which have touched on the issue. (See, e.g., *People* v. *Castillo* (1987) 193 Cal.App.3d 119, 124-125 [238 Cal.Rptr. 207] [mistake of fact defense cannot be predicated on delusions

which are a product of mental illness or mental retardation]; *People* v. *Gutierrez* (1986) 180 Cal.App.3d 1076, 1083 [225 Cal.Rptr. 885] ["[w]hile involuntary intoxication is a circumstance which may be considered in determining reasonableness, mental illness is not"]; *People* v. *Mathews* (1994) 25 Cal.App.4th 89 [30 Cal.Rptr.2d 330] [acknowledging that *physical* disability can be considered in determining the reasonableness of a person's conduct].)

Our conclusion that respondent's sudden onset of mental illness is not a defense to appellants' negligence action is also supported by the weight of authority in other jurisdictions. For example, in *Turner* v. *Caldwell* (1980) 36 Conn. Supp. 765 [421 A.2d 876], defendant, in a special defense, alleged (with language remarkably similar to the instant case) that she was suddenly stricken by mental illness which she had no reason to anticipate, thereby rendering it impossible for her to control her vehicle. The court granted the motion to strike this special defense, noting that "[t]he weight of authority is that insane persons are liable for the negligent acts." (421 A.2d at p. 877.)[2]

---

[2]See also *Goff* v. *Taylor* (Ky.Ct.App.1986) 708 S.W.2d 113 (defendant suffering from brain disease or disorder not excused from wrongful death liability; commentators questioning long-standing common law rule do not attempt to reach fairness to victim); *Schumann* v. *Crofoot* (1979) 43 Or.App. 53 [602 P.2d 298] (mental illness not a defense to negligent conduct); *Greenberg* v. *McCabe* (E.D.Pa. 1978) 453 F.Supp. 765, 768, affd. (3d Cir. 1979) 594 F.2d 854, cert. den. *subnom. McCabe* v. *Greenberg* (1979) 444 U.S. 840 [62 L.Ed.2d 51, 100 S.Ct. 78, 100 S.Ct. 79] ("in determining the reasonableness of a person's conduct, his or her illness or physical disability can be considered in defining the standard which he or she must meet, but . . . a mental deficiency cannot be taken into account"); *Jolley* v. *Powell* (Fla.Dist.Ct.App.1974) 299 So.2d 647, 649 (mentally deficient person subject to liability for negligent conduct); *Kuhn* v. *Zabotsky* (1967) 9 Ohio St.2d 129 [224 N.E.2d 137] (defendant alleged he had been suddenly stricken by a mental illness which he had no reason to anticipate and which rendered it impossible for him to control the car which he was driving; situation different from case where physical disability, caused by unconsciousness, made it impossible to control car; "where one party is mentally sound, blameless and injured and the other is at fault and mentally ill or insane, the loss which must be borne by someone should be suffered by the person at fault"); *Delahanty* v. *Hinckley* (D.D.C. 1992) 799 F.Supp. 184, 186-187 (court refused to reject historical rule of jurisdiction, requiring that an insane actor be held liable for compensation to the victims of his torts, reasoning that modern justifications for such a rule include: (1) using objective standard to determine primary negligence helps minimize the burden on the community from deinstitutionalization, (2) helps foster community acceptance of the mentally ill, and (3) encourages the mentally ill to become self-sufficient, responsible members of the community); cf. *Anicet* v. *Gant* (Fla.Dist.Ct.App. 1991) 580 So.2d 273 (distinguishing *Mullen* v. *Bruce, supra,* 168 Cal.App.2d 494 as involving "an interpretation of a California Code provision, which has no Florida equivalent, which specifically states that 'a . . . person of unsound mind . . . is civilly liable for a wrong done by him. . . .'"; holding that violently insane resident of mental institution not liable to mental institution attendant for violent acts over which he had no control); see also *Mujica* v. *Turner* (Fla.Dist.Ct.App. 1991) 582 So.2d 24, 25, where the *Anicet* court acknowledged that "[a]lthough we agree that ordinarily a mental incompetent is responsible for his own torts [citations], we have recently held that this rule is inapplicable when the incompetent has been

■ Because we have concluded that the sudden and unanticipated onset of mental illness is not a defense to an action based on the negligent operation of a motor vehicle, the summary judgment must be reversed. In view of this conclusion, it is not necessary to consider appellants' remaining contentions on appeal.

The summary judgment is reversed. Costs to appellant.

Martin, J., and Thaxter, J., concurred.

---

institutionalized, as here, because of her mental incompetency and injures one of her caretakers while in such institution."