Kuhn, Appellant, *v.* Zabotsky, Appellee.

(No. 40141—Decided March 1, 1967.)

Mr. George A. Chuparkoff, for appellant.

Messrs. Pfau, Pfau & Comstock and Mr. William E. Pfau, Jr., for appellee.

O'NEILL, J. In answer to the allegation in plaintiff's petition that as a result of the negligence of the defendant the defendant's car struck the plaintiff's car in the rear, the defendant filed an answer which alleges that "* * * defendant * * * admits that about the time and place set forth in plaintiff's petition there was a collision between automobiles being operated by the parties hereto," and denies all other allegations.

During the trial, over objection of the plaintiff, the defendant was permitted to amend his answer, which amendment added the following allegation: "* * * that at the time of said accident and immediately prior thereto, the defendant had been suddenly stricken by a mental illness which he had no reason to anticipate and which rendered it impossible for him to control the car which he was driving."

Before argument the judge charged the jury as follows:

" * * * if you find from the evidence that the defendant, Mr. Zabotsky, was suddenly stricken by a mental illness which he had no reason to anticipate and which rendered it impossible for him to control the car which he was driving, then your verdict must be in favor of the defendant, Mr. Zabotsky."

In the general charge following the argument, the judge charged the jury, in part, as follows:

"* * * there is another issue in this case and that is raised in the answer to the allegations of plaintiff, wherein the defendant says that at the time of the accident and immediately prior thereto the defendant had been suddenly stricken by a mental illness which he had no reason to anticipate and which rendered it impossible for him to control the car which he was driving.

Now, in the charge before argument, I gave you the law on that issue. The burden of proving such mental illness is upon the defendant, and he must prove the same by the greater weight of the evidence. If you find by the greater weight of the evidence that the sole, proximate cause of the accident and the resultant injuries, was sudden mental illness suffered by the defendant which he had no reason to anticipate and which rendered it impossible for him to control the car he was driving, then your verdict should be for the defendant. On the other hand, if the defendant has failed to establish by the greater weight of it, this defense of mental illness, as has been described to you, then and in that event, you already having found, if you have, that the defendant was negligent and that his negligence was the proximate cause of the accident, the plaintiff would recover.''

The judge charged the jury upon the law of negligence and upon proximate cause.

Although the judge did not charge upon the assured-clear-distance-ahead statute, Section 4511.21, Revised Code, it is undisputed from the evidence that the defendant violated that statute, and his conduct constituted negligence per se, unless his failure to comply with the statute is excused. *Spalding* v. *Waxler*, 2 Ohio St. 2d 1, paragraph one of the syllabus.

The defendant's amended answer alleges as an excuse "sudden mental illness." Counsel for the defendant at the trial and in brief and argument before this court attempts to characterize the alleged excuse as "blackout" and relies upon the case of *Lehman* v. *Haynam*, 164 Ohio St. 595, for authority for such a valid legal excuse.

An examination of the defendant's answer makes it clear *that "blackout" is not pleaded* as a defense in the answer. An examination of the entire record of the case indicates that *there was no evidence—not a shred—of the defendant having "blacked out"* or being unconscious prior to this accident.

The defendant testified that he had no recollection of what happened after he drank a cup of coffee at work until he was in the psychiatric ward of the hospital. However, the undisputed evidence in the record is that he drove his car the distance of approximately two miles from his place of work to the place of the accident. Part of this route was over a one-way street. The de-

fendant was required to negotiate several sharp turns, some of which were right-angle turns. The route crossed several intersections, some of which were controlled by traffic lights and some by stop signs. After the defendant's car struck the car of the plaintiff, the defendant drove his car behind the plaintiff's car for a block and a half and stopped his car five or six feet behind the plaintiff's car. The defendant got out of his car, followed the plaintiff to a telephone booth and, when the plaintiff attempted to call the police, the defendant grabbed the telephone book and tore out the page that the plaintiff was attempting to use, saying, "you don't want to call the police." The defendant asked a policeman for a drink of water to stop his coughing and when the policeman brought him the cup of water he threw the water in the face of the policeman. The defendant tried to leave the scene of the accident by running along the road, and the police found it necessary to chase and apprehend him. When police asked his name, the defendant said that he was St. Michael the Archangel. After the accident, the defendant was taken from the scene of the accident to the police station in the paddy wagon, and later that night his daughter and wife came to the jail, with a relative who was a policeman then off duty, and took the defendant to the hospital, where he was placed in the psychiatric ward.

The psychiatrist, who was a witness called by the defense, testified that the defendant was mentally ill; and that he was suffering from a psychotic depression reaction. However, he did not testify that the defendant had "blacked out" or that he was unconscious prior to, at the time of, or after the accident. He testified that the defendant was incompetent not unconscious.

The rule asserted in *Lehman* v. *Haynam, supra,* which is relied upon by defendant, is limited to a driver of an automobile who is "suddenly stricken by a period of unconsciousness." On the basis of the pleadings and all the evidence in this case, that rule is not applicable to this case. The charge which the court gave the jury on "blackout" was error.

"Blackout" is not pleaded in the answer and there was no evidence in the record of "blackout" or "unconsciousness."

The charge which the judge gave to the jury on "mental illness" did not correctly state the law and was prejudicial error.

There are not many cases in any jurisdiction in this country upon the question of tort liability based upon negligence, where the defense is mental illness or temporary insanity. However, the rule seems well established.

It is stated in The American Law Institute, Restatement of the Law, 2d, Torts (1965), 16, Section 283B:

"Unless the actor is a child, his insanity or other mental deficiency does not relieve the actor from liability for conduct which does not conform to the standard of a reasonable man under like circumstances."

See, also, the following statement in Prosser on Torts (3 Ed.) 156, Section 32:

"Mental Capacity.

"As to the mental attributes of the actor, the standard remains of necessity an external one. 'The law,' says Mr. Justice Holmes in a much quoted passage, 'takes no account of the infinite varieties of temperament, intellect, and education which make the internal character of a given act so different in different men. It does not attempt to see men as God sees them, for more than one sufficient reason.' The fact that the individual is a congenital fool, cursed with inbuilt bad judgment, or that in the particular instance he 'did not stop to think,' obviously cannot be allowed to protect him from liability. Apart from the very obvious difficulties of proof of what went on in his head, it may be no bad policy to hold a fool according to his folly. The harm to his neighbors is quite as great, and may be greater, than if he had a modicum of brains; and if he is to live in the community, he must learn to conform to its standards, or pay for what he breaks. As to all lack of intelligence short of actual insanity, no allowance is made; the standard of reasonable conduct is applied, and 'it is not enough that the defendant did the best he knew how.' In the few cases that have considered the question, the same standard has been extended even to the negligence of those who are definitely insane. * * * "

See, also, the following in *Ib.,* 1030, Insanity, Section 129:

"So far as negligence is concerned, there have been surprisingly few cases, nearly all of which have held the insane person liable for failure to conform to the standard of conduct required of a sane man. * * * "

134

See, also, 1 Cooley on Torts (4 Ed. 1932), 186 and 187, Sections 64 and 65.

Insanity is a defense to a criminal charge. In a criminal case, upon conviction, there is a penalty involved which is recognized as punishment for the wrong committed.

The policy of the law has been that an insane person should not be held guilty of a criminal act committed while he was insane.

However, in a negligence case, such as the instant cause, where no punishment is involved the rule is based upon the public policy that as between two parties to an accident, where one party is mentally sound, blameless and injured and the other is at fault and mentally ill or insane, the loss which must be borne by someone should be suffered by the person at fault. This public policy also takes cognizance of the fact that mental illness is difficult of proof and susceptible of being feigned.

The defendant in this case seems to take the position that as between an injured person who is blameless and mentally sound and a party who is at fault and mentally ill, the person who is blameless, mentally sound and injured should be required to suffer the loss.

The rule concerning the liability of a mentally ill defendant for his negligent conduct is different from the rule expressed in *Lehman* v. *Haynam, supra,* where physical disability, caused by unconsciousness, made it impossible to control the car

However, had there been evidence of blackout or unconsciousness in this record, which caused physical disability and thereby made it impossible for the defendant to control his car, this court would be called upon to re-examine the rule expressed in paragraph two of the syllabus of *Lehman* v. *Haynam, supra,* in the light of our recent decisions in *Spalding* v. *Waxler,* 2 Ohio St. 2d 1; *Bird* v. *Hart,* 2 Ohio St. 2d 9; *Stump* v. *Phillians,* 2 Ohio St. 2d 209; and *Kettering* v. *Greene,* 9 Ohio St. 2d 26.

The judgment of the Court of Appeals is, therefore, reversed.

*Judgment reversed.*

TAFT, C. J., MATTHIAS, HERBERT, SCHNEIDER and BROWN, JJ., concur.