ROMAN ET AL, APPELLANTS, v. ESTATE OF GOBBO, APPELLEE.

[Cite as *Roman v. Estate of Gobbo,*
99 Ohio St.3d 260, 2003-Ohio-3655.]

(No. 2002–0285—Submitted March 11, 2003—Decided July 23, 2003.)

**ALICE ROBIE RESNICK, J.**

{¶ 1} The issue in this appeal involves the viability of the sudden-medical-emergency defense (also known as blackout) as a complete defense to liability in motor vehicle negligence cases. For the reasons that follow, we uphold the validity of the defense by reaffirming this court's decision in *Lehman v. Haynam* (1956), 164 Ohio St. 595, 59 O.O. 5, 133 N.E.2d 97.

I

Facts and Procedural History

{¶ 2} On March 15, 1999, an automobile driven by Nino Gobbo turned north onto West 130th Street from Brookpark Road in Cleveland, Ohio, struck a glancing blow to a vehicle, accelerated, left the right side of the roadway for a time, returned to the roadway, went off the right side of the roadway again and ran over a road sign, eventually returned to the roadway, went left of center, and collided with at least two southbound vehicles before coming to a halt. Nino Gobbo was pronounced dead after the incident, as was his wife, Frances Gobbo, a passenger in his automobile. Spencer Schaffer, who was the driver of a south-

bound vehicle, and Ronald Gold, a passenger in Schaffer's vehicle, were killed as a result of the accident. Injured in the accident were William Gold, who was also a passenger in Schaffer's vehicle, and Walter Roman, the driver of another southbound vehicle.

{¶ 3} Plaintiffs-appellants, Roman, William Gold, the estate of Ronald Gold, the estate of Spencer Schaffer, and relatives of the decedents, filed suit against defendant-appellee, the estate of Nino Gobbo, in the Court of Common Pleas of Cuyahoga County, alleging that Gobbo had negligently caused the injuries and deaths. In its answer, appellee denied liability, asserting the defense of "sudden medical emergency," or "blackout." Appellee claimed that Gobbo suffered an incapacitating heart attack prior to the incident and therefore was not responsible for the accident and not negligent.

{¶ 4} The trial court granted appellee's motion to bifurcate the trial, which was predicated on the defense of sudden medical emergency, and the case proceeded to jury trial on the issue of liability only. The trial was conducted according to the standards for the sudden-medical-emergency defense established by this court in *Lehman*. Paragraph two of the syllabus of that case held, "Where the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it impossible for him to control the car he is driving, he is not chargeable with negligence as to such lack of control." Paragraph three of the syllabus of that case held, "Where in an action for injuries arising from a collision of automobiles the defense of the defendant driver is that he was suddenly stricken by a period of unconsciousness, which rendered it impossible for him to control the car he was driving and which he had no reason to anticipate or foresee, the burden of proof as to such defense rests upon such driver."

{¶ 5} In light of *Lehman,* there were two main questions the trial would focus on: (1) Was Gobbo stricken with a sudden medical emergency, and, if he was, at what point in the sequence of events did it occur? and (2) Should Gobbo's medical past and problems with his heart have caused him to foresee that he was likely to suffer a heart attack while driving?

{¶ 6} At trial, appellants presented several eyewitnesses to the accident and a Cleveland police officer from the city's Bureau of Traffic, Accident Investigation Unit. These witnesses told how Gobbo's automobile careered erratically on 130th Street and ultimately crashed into vehicles driven by Spencer Shaffer and Walter Roman.

{¶ 7} Appellee presented the testimony of Dr. Michael Koehler, who had been retained by appellee to review the incident. Dr. Koehler noted that the coroner's report stated that Gobbo had died of hypertensive atherosclerotic cardiovascular

disease, described as a narrowing of the coronary arteries restricting blood flow to the heart, and not from trauma suffered in the accident.

{¶ 8} Dr. Koehler reviewed for the jury Gobbo's medical records, which covered his history of heart problems. He observed that Gobbo had complained to his physician several times of ongoing claudication in his legs, which is pain caused by narrowing of the arteries, brought on by walking or other leg exertion. Dr. Koehler testified that a person with narrowing of the arteries around the heart would also tend to have narrowing of other arteries, such as in the legs.

{¶ 9} Dr. Koehler offered the opinion, based on his review of Gobbo's medical records, that Gobbo's driving should not have been restricted and that Gobbo suffered sudden cardiac death that could not have been foreseen and that rendered him unconscious and unable to control his auto.

{¶ 10} Appellee also presented the testimony of James B. Crawford, an accident-reconstruction expert engaged by appellee, who described the sequence of events based on his review of police crash-investigation records, eyewitness testimony, and other information about the incident. Crawford opined that Gobbo had suffered a sudden, overwhelming heart attack just prior to striking the first vehicle in the crash sequence and that the heart attack had caused him to lose control of his vehicle. Crawford based his conclusion in part on his review of records indicating that at no time during the incident (which covered a distance of over 1,300 feet from the initial crash point to the final resting place of Gobbo's automobile) did Gobbo take any evasive action or apply his brakes.

{¶ 11} The deposition of Dr. Mohan Patel, Gobbo's physician, was read to the jury during the trial. Dr. Patel reviewed charts of Gobbo's visits with him and several other doctors over the years, detailed the medications that Gobbo had received, and explained results of tests that Gobbo had undergone. Gobbo had heart bypass surgery in 1979 and had been monitored for his heart condition since that time. Gobbo had visited physicians several times complaining of chest pain in the 1980s and 1990s and was prescribed nitroglycerin for angina in 1983.

{¶ 12} Gobbo visited Dr. Patel in February 1998 and in November 1998, four months before the accident. At those visits, although Gobbo continued to report intermittent claudication of his legs, he told Dr. Patel that he was experiencing no chest pain. Dr. Patel testified that he had never counseled Gobbo not to drive and believed that there was never any reason to do so. Dr. Patel characterized Gobbo's heart condition as stable angina, as opposed to unstable progressive angina, in which heart disease worsens over time. In Dr. Patel's opinion, there was no way the incident could have been predicted or prevented.

{¶ 13} At that point in the trial, appellee rested and moved for a directed verdict based on the sudden-medical-emergency defense. The trial court denied the motion.

{¶ 14} Dr. Frank Miller, the employee of the county coroner's office who performed the autopsy on Gobbo's body, was then called and testified about the autopsy and his findings, including the finding that Gobbo died of hypertensive atherosclerotic cardiovascular disease, described as high blood pressure combined with blockages in the blood vessels. Dr. Miller testified that there was no way to medically determine precisely when Gobbo's death occurred and also no way to determine conclusively whether Gobbo was unconscious when his auto struck the first vehicle in the crash sequence. Dr. Miller also testified that people with claudication of the legs can sometimes experience severe cramping and numbness of their legs.

{¶ 15} At the close of evidence, appellants moved the trial court for a directed verdict, arguing that the sudden-medical-emergency defense should be abolished and that the risk of loss in an accident in which the defense is invoked should be on the driver who suffered the sudden unconsciousness. The trial court denied the motion.

{¶ 16} After closing arguments, the trial judge's charge to the jury included instructions on the sudden-medical-emergency defense, instructing the jury in accordance with *Lehman* that the defense would be an excuse for negligence if appellee proved that Gobbo was suddenly stricken by a heart attack he could not have reasonably foreseen and that it was impossible for Gobbo to control his auto due to the heart attack. The jury was instructed to take into account the evidence of Gobbo's previous experiences that may have warned him of the likelihood of heart attack and of the dangers of driving, and was told that blackout is an affirmative defense that the defendant bears the burden of proving. See 1 Ohio Jury Instructions (2002) 132, Section 7.25 (instructions on negligence per se, excuse, foreseeability, and burden of proof regarding blackout defense).

{¶ 17} The jury returned a verdict in appellee's favor, and the trial court entered judgment on the jury's verdict. In answers to interrogatories, the jury determined (1) that appellants proved by a preponderance of the evidence that Gobbo violated a statute or ordinance, i.e., operating a vehicle without reasonable control or crossing the center line; (2) that appellee proved that Gobbo suffered a heart attack prior to the first collision; and (3) that the heart attack was not reasonably foreseeable.

{¶ 18} The court of appeals relied on this court's holding in *Lehman* to affirm the judgment below, observing that *Lehman* continues to be binding precedent, that the sudden-medical-emergency defense delineated in that case remains a valid defense in Ohio, and that the jury verdict for appellee was consistent with the standards set forth in *Lehman*.

{¶ 19} The cause is now before this court pursuant to the allowance of a discretionary appeal.

## II

### Summary of Arguments

{¶ 20} At issue in this case is the continuing vitality of *Lehman*. This court in that case, at paragraph two of the syllabus, adopted the sudden-medical-emergency defense, also called the "unforeseen unconsciousness" defense, as a complete defense to an action based on the asserted negligence of a defendant driver of a motor vehicle. See, also, 164 Ohio St. at 599–600, 59 O.O. 5, 133 N.E.2d 97. The *Lehman* court, at paragraph three of the syllabus, placed the burden of proving the defense on the defendant driver who asserts it.

{¶ 21} The trial in this case was conducted in accordance with the principles of *Lehman*, and the jury made factual findings, as evidenced by the answers to interrogatories, that Gobbo's estate proved that he had suffered a sudden medical emergency that was not foreseeable prior to the accident, thus fulfilling the requirements of that defense as set forth in *Lehman*. In other words, Gobbo's violation of safety statutes constituted negligence per se, but his violation was excused due to the sudden emergency he suffered. Therefore, appellants' principal argument, made in their first proposition of law, is that *Lehman* should be overruled and that the defense of sudden medical emergency should be abolished in Ohio. Appellants' secondary argument, made in their second proposition of law, is that *Lehman* should be severely limited.

{¶ 22} At its broadest, this case poses a conflict between two fundamental principles of tort law – on the one hand, in order to be found negligent, one must act unreasonably, i.e., only the blameworthy should be liable for the consequences of their actions; and on the other hand, injured parties should be compensated for their losses if possible, especially when they are totally innocent and could have done nothing to avoid the injuries they suffered.

{¶ 23} Appellants argue that the defense of sudden medical emergency should be abolished because it conflicts with motor vehicle safety laws enacted to protect the public and because it precludes recovery for innocent victims who are injured by the actions of drivers who would otherwise be liable if not for the defense. Appellants point to decisions of this court that have in effect found defendant drivers who have asserted that they were unable to control their vehicles due to unforeseen emergencies in other contexts strictly liable for their actions. Appellants argue that *Lehman* is inconsistent with those decisions, which generally are based on the public policy that favors the recovery of damages by innocent tort victims whenever possible.

{¶ 24} Appellee defends *Lehman* by arguing that fault-based liability is a fundamental principle of American tort law. Appellee quotes Justice Oliver Wendell Holmes to support the view that *Lehman* was correctly decided:

{¶ 25} "The general principle of our law is that loss from accident must lie where it falls, and this principle is not affected by the fact that a human being is the instrument of misfortune. But relatively to a given human being anything is accident which he could not fairly have been expected to contemplate as possible, and therefore to avoid." Holmes, The Common Law (1881) 94.

{¶ 26} Appellee cites authorities such as Dobbs, The Law of Torts (2000) 282: "The defendant who is suddenly and unforeseeably incapacitated while driving, as the result of a heart attack or seizure may lose substantial control of his vehicle and inflict great harm, but even if his movements count as action and not merely as a reflex, he is not in violation of the reasonable person standard and not liable for the harm done, so long as the physical seizure was in fact unforeseeable." See, also, 2 Restatement of the Law 2d, Torts (1965) 18, Section 283C, Comment c, which articulates essentially the same position.

{¶ 27} In addition, appellee argues that *Lehman* is based upon sound public policy and that the great weight of authority supports the decision. Appellee urges that the alternative advocated by appellants, strict liability, is principally limited to cases involving products liability and "abnormally dangerous activity" and that the concept of liability without fault has no place in the circumstances presented by this case.

## III

### *Lehman* and the Sudden–Medical–Emergency Defense

{¶ 28} In adopting the sudden-medical-emergency defense, the *Lehman* court conducted very little analysis beyond stating that it was appropriate to follow the approach taken by other jurisdictions, as illustrated in an annotation that also considered other situations that might affect a defendant driver's potential liability:

{¶ 29} "The rule with reference to unconsciousness being a defense against a claim of negligence is well stated as follows in [Annotation, Physical Defect, Illness, Drowsiness, or Falling Asleep of Motor Vehicle Operator as Affecting Liability for Injury (1953) ] 28 A.L.R.(2d) [12] 35 [Section 15]:

{¶ 30} " 'By the great weight of authority, an operator of a motor vehicle who, while driving, becomes suddenly stricken by a fainting spell or loses consciousness from an unforeseen cause, and is unable to control the vehicle, is not chargeable with negligence or gross negligence. Stated differently, fainting or momentary loss of consciousness while driving is a complete defense to an action based on negligence (and a fortiori to an action based on gross negligence) if such loss of consciousness was not foreseeable.' " *Lehman,* 164 Ohio St. at 599–600, 59 O.O. 5, 133 N.E.2d 97.

{¶ 31} The *Lehman* court noted that the A.L.R. annotation listed 20 jurisdictions as support for the quoted statement. Id. at 600, 59 O.O. 5, 133 N.E.2d 97.

{¶ 32} The sections of the annotation quoted in *Lehman* that addressed sudden unconsciousness as a defense have since been superseded by Annotation, Liability for Automobile Accident Allegedly Caused by Driver's Blackout, Sudden Unconsciousness, or the Like (1979 and Supp.2002), 93 A.L.R.3d 326. The superseding annotation carries forward the essential sentiment expressed in the passage quoted above, observing that "the cases decided under negligence theories have *uniformly* held that a sudden loss of consciousness while driving is a complete defense to an action based on negligence or gross negligence, if such loss of consciousness was not foreseeable." (Emphasis added.) Id. at 330.

{¶ 33} As supplemented, the annotation now lists cases from 36 states and the District of Columbia as support for the preceding statement. Notably, the annotation lists no jurisdictions as following a contrary rule. Appellants have not cited a case from any jurisdiction that rejects sudden medical emergency as a complete defense, and our research has found none. Even among those cases finding the driver of a vehicle who asserted the defense liable or potentially liable, the applicability of the defense in the appropriate case is unquestioned.

{¶ 34} Appellants argue that it is incongruous to allow sudden medical emergency as a complete defense to negligence in motor vehicle cases when other sudden emergencies involving motor vehicles are not valid defenses. Appellants point to several situations in which a defendant who violated a safety statute could not escape liability for an unavoidable resulting accident even though the accident may have been unforeseeable.

{¶ 35} For example, in *Spalding v. Waxler* (1965), 2 Ohio St.2d 1, 2–3, 31 O.O.2d 1, 205 N.E.2d 890, the defendant driver who failed to maintain assured clear distance and who failed to keep his vehicle on the right half of the roadway denied negligence, claiming that his brakes suddenly failed, that his brakes had been regularly maintained, and that he had no warning that the brakes would fail. This court refused to allow the defendant an opportunity to interpose sudden emergency as a legal excuse to his negligence per se, holding at paragraph six of the syllabus, "Brake failure cannot be a legal excuse for failure to comply with a safety statute regulating the operation of a motor vehicle on the public highways." See, also, *Stump v. Phillians* (1965), 2 Ohio St.2d 209, 211, 31 O.O.2d 413, 207 N.E.2d 762 (same); *Moore v. Siebelt* (1966), 6 Ohio St.2d 115, 116, 35 O.O.2d 135, 216 N.E.2d 62 ("An emergency caused by tire failure cannot serve as a legal excuse for [failing to maintain assured clear distance]. The trial court was in error in charging the jury on sudden emergency").

{¶ 36} In *Kuhn v. Zabotsky* (1967), 9 Ohio St.2d 129, 38 O.O.2d 302, 224 N.E.2d 137, paragraph two of the syllabus, this court held, "In a negligence action, the

fact that a motorist is mentally ill, mentally deficient or insane will not serve as a valid legal excuse for his failure to comply with * * * a safety statute regulating vehicular traffic."

{¶ 37} In *Kuhn*, 9 Ohio St.2d at 134, 38 O.O.2d 302, 224 N.E.2d 137, this court stated that the rule denying mental illness as a defense in negligence cases "is based upon the public policy that as between two parties to an accident, where one party is mentally sound, blameless and injured and the other is at fault and mentally ill or insane, the loss which must be borne by someone should be suffered by the person at fault." The *Kuhn* court distinguished *Lehman*, finding that a different rule applies when unconsciousness makes it impossible to control a vehicle, as in *Lehman*, than when mental illness allegedly makes control impossible.

{¶ 38} Appellants argue that the same public policy in favor of compensation for tort victims underlying the decision in *Kuhn* should also apply in this case and seize upon the following statement from *Kuhn*, 9 Ohio St.2d at 134, 38 O.O.2d 302, 224 N.E.2d 137, to justify their position that this court should reconsider *Lehman* :

{¶ 39} "[H]ad there been evidence of blackout or unconsciousness in this record, which caused physical disability and thereby made it impossible for the defendant to control his car, this court would be called upon to re-examine the rule expressed in paragraph two of the syllabus of *Lehman v. Haynam*, supra, in the light of our recent decisions in *Spalding v. Waxler*, 2 Ohio St.2d 1 [31 O.O.2d 1], 205 N.E.2d 890 [and other brake failure cases]."

{¶ 40} In addition, appellants cite a 1992 unreported trial court decision in which a trial judge granted summary judgment to a plaintiff seeking recovery from a defendant who had suffered a sudden stroke while driving, resulting in an accident that rendered the plaintiff a quadriplegic. *Canis v. Fleps* (Jan. 6, 1992), Mahoning C.P. No. 88 CV 631. In so ruling, the trial judge relied on the above-quoted dicta from *Kuhn* regarding this court's possible willingness to reconsider *Lehman* and found that sudden-medical-emergency cases should be treated the same as mechanical-failure cases such as *Spalding*.

{¶ 41} The judge in *Canis* determined that, consistent with *Spalding* and *Kuhn*, a form of strict liability applied in the case before him and that because the defendant had failed to control his vehicle, he should be liable for the damages caused regardless of the fact that he may have suffered sudden and unforeseen unconsciousness. The judge remarked, "Where a loss must be born [sic] by one of two innocent persons, it should be born [sic] by the person who occasioned the loss. * * * [A] sound public policy requires that the Defendant be held accountable for the injuries caused by his operation of his motor vehicle * * *."

{¶ 42} The significance of appellants' arguments is weakened by the paucity of truly convincing authority they have been able to cite in support of their position. We agree with the observation of the court of appeals below that the judge in *Canis* essentially fashioned his own rule of law and misapplied applicable precedents, particularly *Lehman,* that he should have followed. Therefore, *Canis* has virtually no precedential value and adds little to our inquiry.

{¶ 43} Moreover, as the *Canis* judge recognized, this court's statement in *Kuhn* that it might be inclined to reconsider *Lehman* was merely dicta, since the *Kuhn* court distinguished the situation before it from that in *Lehman* and declined to equate mental illness with physical afflictions. Furthermore, this court has had several opportunities to review cases allowing motor vehicle accident defendants to escape liability based on a sudden-medical-emergency defense since *Kuhn* was decided but has declined to review those cases, thereby refusing to reconsider the rule of *Lehman* that guided those decisions and declining to follow up on the *Kuhn* dicta. See, e.g., *Jenkins v. Morgan* (1988), 57 Ohio App.3d 40, 566 N.E.2d 1244, appeal not allowed (1988), 39 Ohio St.3d 729, 534 N.E.2d 351; *Fitas v. Estate of Baldridge* (1995), 102 Ohio App.3d 365, 657 N.E.2d 323, appeal not allowed (1995), 73 Ohio St.3d 1428, 652 N.E.2d 801; *Griffith v. Hoile* (Jan. 12, 1998), 3d Dist. No. 5–97–23, 1998 WL 12682, appeal not allowed (1998), 81 Ohio St.3d 1526, 692 N.E.2d 1027. Also, in a related vein, the decision in *Kuhn* appears to have been influenced by a specific set of facts that called into question the link between the defendant's mental illness and his alleged inability to control his vehicle, providing a possible further distinction between *Lehman* and *Kuhn* and weakening *Kuhn*'s impact on this case.

{¶ 44} Courts frequently distinguish between acts committed by those who are mentally ill or insane and by those who are afflicted with medical emergencies. This distinction is often based on the perhaps unfounded and outdated fear that "mental illness is difficult of proof and susceptible of being feigned." *Kuhn,* 9 Ohio St.2d at 134, 38 O.O.2d 302, 224 N.E.2d 137. See, generally, Goldstein, Asking the Impossible: The Negligence Liability of the Mentally Ill (1995) 12 J. of Contemporary Health Law and Policy 67. However, if the distinction is unjustified on modern views of the nature of mental illness, it would appear that *Kuhn,* more than *Lehman,* is the questionable decision.

{¶ 45} We find that the distinction between a sudden mechanical failure in cases such as *Spalding* and the sudden medical emergency in *Lehman* is at least rational in this context. The distinction is based on the belief that a mechanical failure theoretically is more predictable (and therefore preventable) than a medical emergency. Also inherent in the distinction is that a mechanical failure usually occurs due to human error at some level and therefore is different in kind from a medical emergency, which is occasioned by the highly unpredictable

nature of a human being's medical condition and involves the medical profession's inability to control physical conditions with absolute precision. However, to the extent that this distinction does not seem to be entirely justifiable, we note that it is by no means universally recognized. The general rule among the states is that sudden unforeseeable brake failure *can* serve as a defense to negligence in the appropriate case. See Annotation, Automobiles: Liability of Owner or Operator of Motor Vehicle for Injury, Death, or Property Damage Resulting from Defective Brakes (1971 and Supp.2002), 40 A.L.R.3d 9, 15. See, also, Keeton, Dobbs, Keeton & Owen, Prosser and Keeton on Torts (5 Ed.1984) 228 and fns. 75 and 83, Section 36 (most states allow brake failure occasioned by physical circumstances beyond the driver's control to serve as an excuse to negligence per se based on a violation of statute). Therefore, to the extent that this court through *Spalding* and other mechanical-failure cases has applied a contrary rule, *Spalding* appears to be a decision that is more at odds with prevailing views than *Lehman*.

{¶ 46} Finally, and most important, as mentioned earlier, appellants' most significant obstacle in convincing this court that *Lehman* should be overruled is that the rule of *Lehman* is the same rule uniformly applied by *all* of the many other jurisdictions that have considered the issue. Although *Lehman* was decided some years ago, more states have adopted the same rule since that time, therefore reinforcing the correctness of *Lehman*'s approach. And while many states, like Ohio, have followed the sudden-medical-emergency rule for a number of years, recent decisions in many jurisdictions clearly indicate that there is no trend away from allowing a sudden and unforeseen medical emergency to serve as a complete defense to negligence in a motor vehicle liability case.[1]

{¶ 47} As another policy reason in favor of allowing recovery against a defendant in this situation, appellants point out that if appellee is permitted to escape liability through the sudden-medical-emergency defense, then Gobbo was not a tortfeasor, and they cannot recover against appellee or Gobbo's liability insurer. Furthermore, pursuant to R.C. 3937.18, appellants allege that they are unable to recover under their own uninsured/underinsured motorist ("UIM")

---

1. A partial listing of decisions of other courts that recognize the same rule as *Lehman* includes *Walker v. Cardwell* (Ala.1977), 348 So.2d 1049; *Hammontree v. Jenner* (1971), 20 Cal.App.3d 528, 97 Cal.Rptr. 739; *Renell v. Argonaut Liquor Co.* (1961), 148 Colo. 154, 365 P.2d 239; *Lutzkovitz v. Murray* (Del.1975), 339 A.2d 64; *Lewis v. Smith* (1999), 238 Ga.App. 6, 517 S.E.2d 538; *Holcomb v. Miller* (1971), 149 Ind.App. 46, 269 N.E.2d 885; *Freese v. Lemmon* (Iowa 1978), 267 N.W.2d 680; *Rogers v. Wilhelm–Olsen* (Ky.App.1988), 748 S.W.2d 671; *McGovern v. Tinglof* (1962), 344 Mass. 114, 181 N.E.2d 573; *Moore v. Presnell* (1977), 38 Md.App. 243, 379 A.2d 1246; *Soule v. Grimshaw* (1934), 266 Mich. 117, 253 N.W. 237; *Dickinson v. Koenig* (1961), 242 Miss. 17, 133 So.2d 721; *Storjohn v. Fay* (1994), 246 Neb. 454, 519 N.W.2d 521; *Word v. Jones* (1999), 350 N.C. 557, 516 S.E.2d 144; *Beasley v. Amburgy* (Tenn.App.2001), 70 S.W.3d 74; *Piatt v. Welch* (Tex.App.1998), 974 S.W.2d 786; *Keller v. Wonn* (1955), 140 W.Va. 860, 87 S.E.2d 453; *Dewing v. Cooper* (1967), 33 Wis.2d 260, 147 N.W.2d 261.

policies, because the sudden-medical-emergency defense prevents them from meeting the requirement of proving the "elements of the insured's claim that are necessary to recover damages from the owner or operator" of the uninsured vehicle. Former R.C. 3937.18(A)(1) quoted, 1997 Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372–2373; virtually identical language in current R.C. 3937.18(D).[2] Appellants argue that their inability to recover insurance proceeds runs afoul of the policy expressed in Ohio's financial responsibility statutes, R.C. Chapter 4509.

{¶ 48} While we sympathize with appellants' predicament, this case is not about insurance coverage, but is about a more fundamental issue, whether appellee can be held liable for the injuries at issue. Regardless of whether we may think that it would be equitable for the General Assembly to allow persons such as appellants to recover full tort damages from their own insurers whenever they have been injured through no fault of their own, appellants' alleged inability to recover under their own UIM coverages is a consequence of their insurance contracts and the General Assembly's policy choice not to require no-fault insurance. That consideration is peripheral to our inquiry and is not a sufficient rationale for overruling *Lehman.*

## IV

### Foreseeability

{¶ 49} In the alternative, appellants argue that if this court is not inclined to overrule *Lehman,* it should reconsider the foreseeability aspects of that decision. To that end, in their second proposition of law, appellants argue that a driver who operates a vehicle with knowledge of any medical condition should bear the risk of injuries that result from loss of consciousness or incapacitation due to the condition. Appellants contend that assumption-of-the-risk principles should apply in a situation where a driver with a medical condition chooses to operate a vehicle.

{¶ 50} If we accept this argument, then only those defendants who have never had any inkling of any medical condition would be able to assert and prevail on the sudden-medical-emergency defense, and all other drivers would be precluded from relying on the defense.

{¶ 51} As it did in this case, the foreseeability inquiry in cases in which a defendant raises the defense of sudden medical emergency frequently amounts to

---

2. Although we assume from their argument that appellants have attempted to recover under their own UIM policies, there is no indication in the record before us that appellants have in fact attempted such recovery. Therefore, there are no details in the record of the reasons behind any possible denial of coverage.

a consideration by the factfinder of whether the defendant driver should have been driving at all. See 2 Restatement of the Law 2d, Torts (1965) 18, Section 283C, Comment c: "[A]n automobile driver who suddenly and quite unexpectedly suffers a heart attack does not become negligent when he loses control of his car and drives it in a manner which would otherwise be unreasonable; but one who knows that he is subject to such attacks may be negligent in driving at all."

{¶ 52} As urged by appellants, the foreseeability inquiry in cases such as these would be redefined to remove any consideration of the reasonableness of choosing to drive despite imperfect health and would essentially mean that all drivers with any history of illness are unable as a matter of law to prevail on a sudden-medical-emergency defense.

{¶ 53} We see no compelling reason to disrupt the balance put in place by *Lehman*. Paragraph three of the syllabus of that decision placed the burden of proving the defense on the defendant, including proving that the unconsciousness was not foreseeable. To adopt appellants' position would be to eviscerate an essential feature of the balance established by *Lehman*, overruling the heart of that decision while maintaining its appearance. For the same reasons that we decline to overrule *Lehman*, we decline to adopt appellants' second proposition of law.[3]

## V

### Conclusion

{¶ 54} For all the reasons discussed above, the rule of *Lehman* is sound and there is no reason for this court to overrule it. A central feature of negligence law is that to be found negligent, a defendant must have acted unreasonably. Where there is no unreasonable conduct, there is no fault. To find a defendant liable for the effects of an unforeseen medical emergency that causes sudden unconsciousness would be to impose strict liability, which is inappropriate for this situation.

{¶ 55} Consequently, we reaffirm paragraphs 2 and 3 of the syllabus of *Lehman* as stating the appropriate rules of law:

{¶ 56} "Where the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it

---

3. Because we have rejected appellants' arguments on the grounds discussed above, we do not base our decision on appellee's contention that to hold a person such as Gobbo strictly liable for his actions would amount to discrimination against the elderly and the disabled. Appellee bases this argument on caselaw, on Ohio's antidiscrimination statute, R.C. Chapter 4112, and on the Americans with Disabilities Act of 1990 ("ADA"), 104 Stat. 327, Section 12101 et seq., Title 42, U.S.Code.

impossible for him to control the car he is driving, he is not chargeable with negligence as to such lack of control."

{¶ 57} "Where in an action for injuries arising from a collision of automobiles the defense of the defendant driver is that he was suddenly stricken by a period of unconsciousness, which rendered it impossible for him to control the car he was driving and which he had no reason to anticipate or foresee, the burden of proof as to such defense rests upon such driver."

{¶ 58} As this case illustrates, many cases in which sudden medical emergency is raised as a defense to negligence are not well suited to resolution by summary judgments or directed verdicts, but must proceed to trial, where it is incumbent upon the factfinder to determine whether the requirements of the defense have been met. Pursuant to *Lehman*, the defendant bears the burden of proof of the defense, which may be difficult to carry. This case presents a textbook example of facts that allowed for a successful invocation of the defense. While we sympathize with appellants, we find that they are precluded from recovering when negligence per se is excused. The decision in *Lehman* and the jury's findings combine to produce that result. We affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., F.E. SWEENEY, WALTERS and LUNDBERG STRATTON, JJ., concur.

O'CONNOR, J., concurs separately.

PFEIFER, J., concurs in part and dissents in part.

SUMNER WALTERS, J., of the Third Appellate District, sitting for COOK, J.

---

**O'CONNOR, J., concurring.**

{¶ 59} I concur with the result reached by the majority. However, I join Justice Pfeifer's partial dissent to the extent that I agree that it is grossly unfair for victims of an accident resulting from a sudden medical emergency to be uncompensated. Common sense dictates that the situation should be remedied.

{¶ 60} I stop short of fully concurring with Justice Pfeifer's opinion because the remedy should come in the form of a well-reasoned and well-drafted legislative enactment, not by judicial fiat.

---

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 61} I concur in paragraphs one and two of the syllabus. I write separately because I would modify the sudden-medical-emergency doctrine.

{¶ 62} Nino Gobbo had a heart attack while driving his car. The consequent accident resulted in the death and injury of several individuals. Gobbo had no reason to believe that he would suffer a heart attack. Therefore, according to the sudden-medical-emergency doctrine, Gobbo was not negligent. To that extent, the sudden-medical-emergency doctrine is logical. However, in equating no negligence with no liability, the sudden-medical-emergency doctrine is not sensible.

{¶ 63} Those individuals killed or injured by Gobbo's heart-attack-induced accident were also not negligent; they did nothing wrong except have the bad luck to be in Gobbo's path when he died. Yet those individuals bear the harsh consequences of the sudden-medical-emergency doctrine. They are unable to collect damages from the person who caused them death and destruction, however innocently. They are unable even to collect on their uninsured motorist coverage. Does this seem sensible?

{¶ 64} R.C. 4511.25 generally prohibits driving left of center. It is one of our most important traffic rules. Would anyone be willing to drive without the expectation that other drivers would comply with the rule? Yet even this statute is trumped by the sudden-medical-emergency doctrine. The question is "Why?"

{¶ 65} No valid public policy is served by applying the sudden-medical-emergency doctrine in this case. Instead, the doctrine prevents accident victims from pursuing damages from the person who caused their death and injury. The doctrine prevents them from collecting on their own insurance policies, which they purchased to protect themselves and their families from just such a catastrophe.

{¶ 66} A better rule would allow individuals like those killed or injured here to pursue damages against a person whose sudden medical emergency resulted in a statutory violation and was the proximate cause of the death or injury. The result in this case would likely be that the accident victims would be able to collect damages under Gobbo's liability insurance or their own uninsured motorist coverage. That makes sense. The sudden-medical-emergency doctrine, as applied to this case, does not make sense, and should be modified.

---

Gold, Schwartz & Co., L.P.A., Gerald S. Gold, Jennifer E. Schwartz and Brian P. Downey, for appellants.

Jones, Day, Reavis & Pogue, Jeffrey S. Sutton, Michael Y. Scudder Jr., Mary Beth Young and Geoffrey M. Johnson; McNeal, Schick, Archibald & Biro Co., L.P.A., Fredric E. Kramer and Brian T. Winchester, for appellee.

Robert P. Rutter, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

Pappas & Associates and Thomas P. Pappas, urging affirmance for amicus curiae National Association of Independent Insurers.