OPINION
{¶ 1} Cincinnati Insurance Company and the Greek Orthodox Church (collectively "CIC") appeal from an order of the Clark County Municipal Court denying *Page 2 
in part their motion to strike and granting summary judgment in favor of James Allen
 {¶ 2} CIC claims that the trial court erred in not striking portions of the defendant's affidavits in support of his summary judgment motion, and that there was a material issue of fact that precludes summary judgment on the basis of the "sudden medical emergency" defense. For the following reasons, we affirm the trial court's judgment.
 I {¶ 3} On September 11, 2004, James Allen was driving to his home after eating lunch with his wife and daughter at the Eagles Club in Springfield, Ohio. While stopped at a traffic light at the intersection of East and High Streets, Allen experienced lightheadedness and sickness in his stomach. After the light changed to green, Allen continued along High Street. Approximately a minute later, Allen became unconscious. His vehicle stuck the fence and damaged the yard of the Greek Orthodox Church.
 {¶ 4} On August 21, 2006, CIC filed a negligence action against Allen, seeking $6,188.88 plus interest for damage to the property. Allen denied liability on the ground that he had suffered a sudden unexpected medical emergency. In September 2007, Allen moved for summary judgment against CIC. He supported his motion with his deposition testimony, his affidavit, and the affidavit of Dr. Thomas Ericksen, his primary care physician. CIC moved to strike portions of Allen's and Dr. Ericksen's affidavits and opposed the motion for summary judgment.
 {¶ 5} On November 6, 2007, the trial court granted in part the motion to strike *Page 3 
and granted Allen's motion for summary judgment. CIC appeals, raising two assignments of error.
 II {¶ 6} The first assignment of error states:
 {¶ 7} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND AN ABUSE OF DISCRETION BY DENYING IN PART, PLAINTIFFS' MOTION TO STRIKE CERTAIN PORTIONS OF THE AFFIDAVITS SUBMITTED BY DEFENDANT."
 {¶ 8} In the first assignment of error, CIC asserts that the trial court erred in failing to strike additional portions of Allen's and Dr. Ericksen's affidavits. The trial court struck paragraph four of Allen's affidavit as hearsay but otherwise overruled the motion.
 {¶ 9} A trial court's decision to sustain or overrule a motion to strike is within the court's sound discretion. Kennedy v. Merck Co.,Inc., Montgomery App. No. 19591, 2003-Ohio-3774. The term "abuse of discretion" connotes more than a mere error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,450 N.E.2d 1140. We will address each affidavit in turn.
 {¶ 10} Allen's affidavit stated, in relevant part:
 {¶ 11} "2. On September 11, 2004, I was driving my automobile on East High Street, Springfield, Ohio.
 {¶ 12} "3. While driving my automobile, I suffered a sudden medical emergency which caused me to lose consciousness, and my automobile struck a fence owned by *Page 4 
the Greek Orthodox Church located at 1127 East High Street, Springfield, Ohio.
 {¶ 13} "4. I was taken by ambulance to Community Hospital where I was diagnosed with syncopal episode secondary to sick sinus syndrome.
 {¶ 14} "5. At no time before the sudden medical emergency, which occurred on September 11, 2004, had I ever received treatment for, or been diagnosed with, sick sinus syndrome or syncopal episodes secondary to sick sinus syndrome."
 {¶ 15} On appeal, CIC claims that the court should have struck Allen's references to a "sudden medical emergency" and "sick sinus syndrome or syncopal episodes secondary to sick sinus syndrome." It argues that the trial court improperly allowed the medical diagnosis to remain in paragraph five of Allen's affidavit and that Allen should not have been allowed to testify to the legal conclusion that he suffered a "sudden medical emergency." We disagree.
 {¶ 16} Although Allen testified to suffering a "sudden medical emergency," that phrase is not a legal term of art. Allen's affidavit can reasonably be interpreted as stating that he suffered a sudden onset of a medical problem, which is admissible. In addition, we find no error in the trial court's denial of the motion to strike paragraph five of Allen's affidavit. Unlike paragraph four, Allen's statement that he had not previously been diagnosed with sick sinus syndrome or syncopal episodes secondary to sick sinus syndrome is not hearsay. Regardless, the issue is not whether Allen was aware of a diagnosis for his medical condition, but whether he knew he had a medical condition that might cause him to lose consciousness. See Dunlap v. W.L. Logan TruckingCo., 161 Ohio App.3d 51, 2005-Ohio-2386, 829 N.E.2d 356, ¶ 51. The *Page 5 
statement in paragraph five that Allen had not previously been diagnosed with a particular medical condition — particularly in the absence of paragraph four — is not probative of whether the unconsciousness was foreseeable. Although the trial court may have elected to strike this paragraph, we find no abuse of discretion in the trial court's failure to strike additional portions of Allen's affidavit.
 {¶ 17} Turning to Dr. Ericksen's affidavit, that affidavit stated in its entirety:
 {¶ 18} "1. I am over 18 years of age and have personal knowledge of the facts set forth herein.
 {¶ 19} "2. I am a medical doctor licensed and certified to practice in the State of Ohio. I currently practice in the State of Ohio as a medical doctor. My business address is 1835 East High Street, Springfield, Ohio 45505. I practice in the area of internal medicine.
 {¶ 20} "3. All opinions given in this Affidavit are given to a reasonable degree of medical certainty.
 {¶ 21} "4. I am familiar with James Allen and injuries and treatment he received stemming from a 1993 transient ischemic attach [sic] (TIA) and a September 11, 2004, motor vehicle accident.
 {¶ 22} "5. Based upon my education, my experience, my training and based upon James Allen's history and examination, it is my opinion to a reasonable degree of medical certainty that in 1993, Mr. Allen suffered from a TIA, or mini-stroke. This was due to a basilar bleed near the brain stem.
 {¶ 23} "6. Based upon my education, my experience, my training and based *Page 6 
upon James Allen's history and examination, it is my opinion to a reasonable degree of medical certainty that on September 11, 2004, Mr. Allen's loss of consciousness was caused by a vasodepressor syncope, which was unrelated to his 1993 TIA.
 {¶ 24} "7. Based upon my education, my experience, my training and based upon James Allen's history and examination, it is my opinion to a reasonable degree of medical certainty that Mr. Allen had no reason to anticipate or foresee the sudden loss of consciousness he experienced on September 11, 2004."
 {¶ 25} CIC claims that paragraph seven of Dr. Ericksen's affidavit was inadmissible, because he failed to state the facts or data upon which his opinion was based. It asserts that Dr. Ericksen "never specifically identified whether he reviewed the deposition transcript of Defendant, never identified what medical documents he was relying upon for his opinion and never pinpointed what data he was expressly relying upon to state Defendant's blackout was unforeseeable."
 {¶ 26} Evid. R. 705 provides: "The expert may testify in terms of opinion or inference and give the expert's reasons therefor afterdisclosure of the underlying facts or data. * * *" (Emphasis ours.) The opinion may be based on facts or data "perceived by the expert." Evid. R. 703. An expert may state an opinion even though it "embraces an ultimate issue to be decided by the trier of fact." Evid. R. 704.
 {¶ 27} According to Allen's deposition, Dr. Ericksen had been his primary physician for ten or twelve years. Dr. Ericksen's affidavit established that he treated Allen as a patient, and he was familiar with Allen's injuries and treatment regarding the TIA and the September 2004 accident. It further established that his opinion was *Page 7 
based on Allen's "history and examination." Based on this data, Dr. Ericksen opined that Allen's loss of consciousness was caused by a vasodepressor syncope unrelated to his 1993 TIA and that the loss of consciousness was not foreseeable by Allen. As Allen's treating physician, Dr. Ericksen's statement that his opinion was based on Allen's "history and examination" is sufficient to lay a foundation under Evid. R. 705.
 {¶ 28} The first assignment of error is overruled.
 III {¶ 29} The second assignment of error reads:
 {¶ 30} "THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 31} In its second assignment of error, CIC claims that the trial court erred in granting summary judgment to Allen, because genuine issues of material fact exist as to whether Allen could have foreseen the occurrence of the blackout.
 {¶ 32} We review the appropriateness of summary judgment de novo and follow the standards set forth in Civ. R. 56. Koos v. Cent. OhioCellular, Inc. (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 255. "Pursuant to Civ. R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367,369-370, 1998-Ohio-389, 696 N.E.2d 201.
 {¶ 33} The trial court granted summary judgment to Allen, reasoning that the *Page 8 
evidence established that Allen had suffered a sudden medical emergency that was not foreseeable. Under the "sudden medical emergency" defense, a driver is not chargeable with negligence when the driver is suddenly stricken by a period of unconsciousness and the unconsciousness could not reasonably be foreseen. Roman v. Estate of Gobbo, 99 Ohio St.3d 260,2003-Ohio-3655, 791 N.E.2d 422.
 {¶ 34} Initially, CIC argues that the "sudden medical emergency" defense is not appropriately resolved by summary judgment. Indeed, the Supreme Court has stated that "many cases in which sudden medical emergency is raised as a defense to negligence are not well suited to resolution by summary judgments or directed verdicts, but must proceed to trial, where it is incumbent upon the factfinder to determine whether the requirements of the defense have been met." Roman,99 Ohio St.3d at 273.
 {¶ 35} While the Supreme Court noted that the first element of the defense whether the driver was unconscious — often involves a credibility determination that cannot be resolved through summary judgment, the Supreme Court has not stated that all cases must be resolved by a trial. To conclude that summary judgment is per se unreasonable whenever the sudden medical emergency defense is raised would abdicate our responsibility to resolve the issue on a case's individual merits.
 {¶ 36} In its summary judgment motion, CIC did not contest that Allen may have been unconscious at the time of the accident. It asserted that a genuine issue of material fact existed as to whether Allen should have reasonably foreseen the blackout. *Page 9 
 {¶ 37} According to Allen's deposition, Allen has experienced lightheadedness on "different occasions" since his stroke in 1993. He explained that lightheadedness had occurred when bending over for a length of time and then straightening up, by turning around too quickly, and at other various times. Allen stated that he did not experience a sickness in his stomach each time that he became lightheaded, but that it sometimes happened. Allen testified that he had not experienced the discomfort in his stomach to "the same degree" that he experienced it on September 11, 2004.
 {¶ 38} Allen stated that, when lightheadedness occurred, he would stop what he was doing, sit down or stand up, and relax, and the lightheadedness would go away. Allen further indicated that there were times when he could not stop what he was doing. Generally, in those instances, the lightheadedness also went away; it did not become more severe.
 {¶ 39} Allen testified that he had previously experienced lightheadedness while driving. On occasion, Allen had pulled over and stopped until the lightheadedness passed. He stated that he would typically wait "half a minute." Allen had never blacked out in the car before September 11, 2004.
 {¶ 40} Allen testified that he had told his doctors about his problems with lightheadedness. Allen told Dr. Ericksen that he was addressing his lightheadedness by stopping his activity and relaxing. The doctor did not place restrictions on Allen's activities.
 {¶ 41} On the day of the accident, Allen started to feel "a little lightheaded" and "sickness in the stomach" while waiting at the traffic light. Allen described the sickness in his stomach as "very severe" and it made him feel as though he would vomit. He *Page 10 
stated that, after the light turned, he "proceeded east, and then suddenly everything went black." After the accident, Allen refused transportation to the hospital because the lightheadedness and sickness in his stomach had gone. Allen testified that he has experienced dizziness and lightheadedness since the accident, but "not that sickness that I had while I was at that red light." Allen has started taking medication for his lightheadedness since the accident.
 {¶ 42} Allen's affidavit, quoted above, indicated that he was suddenly struck with a medical condition that caused him to lose consciousness. Dr. Ericksen's affidavit, also quoted above, opined that this sudden loss of consciousness was not foreseeable by Allen.
 {¶ 43} CIC contends that Allen's history of lightheadedness and problems with his equilibrium created a question of fact as to whether his blackout was foreseeable. We disagree. At the time of the accident, Allen had been experiencing lightheadedness for approximately eleven years. There was no evidence that Allen had ever lost consciousness due to the lightheadedness prior to the September 2004 accident, and he stated that he had not previously — and has not since — felt symptoms as severe. Although Allen indicated that he usually stopped what he was doing until the lightheadedness passed, Allen further indicated that the lightheadedness passed whether he stopped or not, without becoming more severe. Based on this undisputed evidence, which is buttressed by Dr. Ericksen's opinion that Allen's loss of consciousness was not foreseeable, the trial court did not err in finding no genuine issue of fact that Allen could not have reasonably anticipated blacking out on *Page 11 
September 11, 2004.
 {¶ 44} We note that the Supreme Court has rejected a narrow interpretation of the sudden medical emergency defense that would limit the defense to those drivers without any history of the illness that caused the unconsciousness. Roman, supra. In Roman, the appellants asserted that a driver who operates a vehicle with knowledge of any medical condition should bear the risk of injuries that result from loss of consciousness or incapacitation due to the condition. The Supreme Court rejected the argument, stating:
 {¶ 45} "If we accept this argument, then only those defendants who have never had any inkling of any medical condition would be able to assert and prevail on the sudden-medical-emergency defense, and all other drivers would be precluded from relying on the defense.
 {¶ 46} "As it did in this case, the foreseeability inquiry in cases in which a defendant raises the defense of sudden medical emergency frequently amounts to a consideration by the factfinder of whether the defendant driver should have been driving at all. See 2 Restatement of the Law 2d, Torts (1965) 18, Section 283C, Comment c: `[A]n automobile driver who suddenly and quite unexpectedly suffers a heart attack does not become negligent when he loses control of his car and drives it in a manner which would otherwise be unreasonable; but one who knows that he is subject to such attacks may be negligent in driving at all.'
 {¶ 47} "As urged by appellants, the foreseeability inquiry in cases such as these would be redefined to remove any consideration of the reasonableness of choosing to *Page 12 
drive despite imperfect health and would essentially mean that all drivers with any history of illness are unable as a matter of law to prevail on a sudden-medical-emergency defense.
 {¶ 48} "We see no compelling reason to disrupt the balance put in place by Lehman [v. Haynam (1956), 164 Ohio St. 595, 133 N.E.2d 97]. Paragraph three of the syllabus of that decision placed the burden of proving the defense on the defendant, including proving that the unconsciousness was not foreseeable. To adopt appellants' position would be to eviscerate an essential feature of the balance established byLehman, overruling the heart of that decision while maintaining its appearance. For the same reasons that we decline to overruleLehman, we decline to adopt appellants' second proposition of law."Roman at ¶ 50-53.
 {¶ 49} Finally, CIC argues that discrepancies between Allen's deposition testimony and the affidavits raise questions about his credibility, thus precluding summary judgment. CIC notes that Allen's affidavit states that he went to the hospital by ambulance while he stated in his deposition that his wife drove him. CIC further points out that his affidavit states that he was diagnosed with syncopal episode secondary to sick sinus syndrome, whereas his deposition testimony states that the doctors did not tell Allen "what happened to [him]." While we acknowledge the contradictions, we do not find them to be significant or material to the ultimate question of whether Allen had reason to anticipate or foresee — prior to the accident — the loss of consciousness.
 {¶ 50} The second assignment of error is overruled. *Page 13 
 {¶ 51} IV
 {¶ 52} The judgment of the trial court is affirmed.
BROGAN, J. and FAIN, J., concur
(Hon. Sumner E. Walters, retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1